# JOHN H. KELLY ET AL.

## vs.

## MONTEBELLO PARK COMPANY.

### Contempt—Criminal and Civil—Right of Appeal.

A judgment imposing a fine for contempt is not appealable if the contempt is criminal rather than civil in its nature.

p. 204

Where the sentence or punishment imposed for disobedience of an injunction was not remedial but distinctly punitive, there was nothing in the contempt proceeding to indicate that the parties treated it as a proceeding in equity for civil contempt, there was no petition praying remedial relief, the fines imposed were not made payable to the parties injured by such disobedience, and the only purpose of the imposition of the fines was to vindicate the authority of the court, the proceeding was one for criminal contempt, and the order imposing fines was not appealable.

p. 204

Conceding that the right of appeal in cases of criminal contempt is to be determined by the provisions of the statutes as to appeals in criminal cases, there is no such right in the absence of a bill of exceptions.

p. 204

That an injunction was served on a legal holiday did not affect the validity of an order imposing a fine for disobedience of the injunction.

p. 205

*Decided June 21st, 1922.*

Appeal from the Circuit Court of Baltimore City (CARROLL T. BOND, J.).

Proceeding against John H. Kelly, Marie Kelly, his wife, and Charles M. Collison, for contempt in disobeying an injunction issued at the suit of the Montebello Park Company and others. From an order imposing fines on account of such contempt, said Kelly and wife and said Collison appeal. Appeal dismissed.

The cause was argued before Boyd, C. J., Briscoe, Thomas, Pattison, Urner, Stockbridge, Adkins, and Offutt, JJ.

*John W. Lohmuller,* for the appellants.

*Carl M. Distler* and *Frederick H. Hennighausen,* for the appellees.

Thomas, J., delivered the opinion of the Court.

This appeal is from an order of the Circuit Court of Baltimore City passed in contempt proceedings.

On the 11th of November, 1921, the Montebello Park Company, a body corporate, Frank M. Goetz and Annie M. Goetz, his wife, filed a bill of complaint in the Circuit Court of Baltimore City against John H. Kelly and Marie Kelly, his wife, to enjoin them from erecting or proceeding with the erection of a garage on their lot in Baltimore City within seventy-five feet from the front street line of said lot, and on the same day a preliminary injunction was granted and issued enjoining the defendants, their "agents, servants and employees" as prayed in the bill. The endorsements on the writ of injunction returned by the sheriff, set out in the record, contain the affidavits of Carl Martin Distler and Frederick H. Hennighausen that a copy of the writ was served by them on John H. Kelly and Marie Kelly, his wife, on the same day it was issued, and the return of the sheriff stating that the injunction was again served on Kelly and his wife on the 14th of November, 1921. On the latter date the court below passed an order requiring Kelly and his wife and Harry Collison to appear in said court on the 18th of November, 1921, and show cause why they should not be punished for contempt of court for disobeying the injunction issued on the 11th of November, 1921, and on the 15th of November Kelly and his wife filed their "answer" setting up the following defenses:

"1. That the paper alleging to be a writ of injunction was served on them on November 11th, 1921, a legal holiday.

"2. That the said writ of injunction was not served by a sheriff or deputy sheriff of Baltimore City.

"3. That the said writ of injunction was not served upon the independent contractor who was engaged in erecting the garage mentioned therein.

"4. That the said John H. Kelly and wife had no control over the said contractor, and could not carry out the orders of this court."

After a hearing on the 18th of November, 1921, at which Kelly and his wife and Harry Collison were present and testimony was produced to show the violation of the injunction, and also by the defendants, the court below passed an order in which, after stating that the evidence showed that Kelly and his wife and Collison had wilfully violated the injunction, it imposed a fine of $200 on Kelly and his wife, and a fine of $100 on Collison, and committed them to the custody of "the warden of the jail of Baltimore City" until the fines were paid. The defendants promptly paid the fines imposed, and then entered this appeal from the order.

The first and important question to be determined is whether an appeal lies from such an order. The common law rule was that a court of competent jurisdiction is the sole judge of contempts against its authority and dignity, and its judgment in such cases is final and conclusive, and not reviewable by any other tribunal, either on a writ of error or appeal, unless specially authorized by statute. *Rapalje on Contempts*, sec. 141; 7 *Am. & Eng. Ency. of Law*, 33-34; 9 *Cyc.* 61-62; 13 *C. J.*, pp. 97-98, par. 155; 6 *R. C. L.*, p. 538-540, sec. 51; *R. C. L.*, Supp. 2, p. 151, sec. 51.

It is said in 13 C. J. 97: "The common-law rule has been changed, however, in many jurisdictions by constitutional or statutory provisions authorizing a review. Accordingly, in jurisdictions where, by statutory or constitutional provisions,

review of contempt orders may be had, authority is not wanting in support of the right of review in cases of civil or constructive contempt, especially in remedial proceedings for contempt where the punishment inflicted is in the nature of an indemnity to the party injured." It is said in 7 *Am. & Eng. Encyc. of Law*, pp. 28-29: "Contempts of courts are further classified as criminal and civil. The division between the two is not uniformly defined in all jurisdictions." This is illustrated by the several definitions of civil and criminal contempts contained in the text and in the note on page 29. See also *Rapalje on Contempts*, sec. 21; 9 *Cyc.* p. 6; 6 *R. C. L.* 490; and 13 *C. J.* 6. In the case of *Bessette* 'v. *W. B. Conkey Co.*, 194 U. S. 324, the Supreme Court quotes the following statement of Judge Sanborn in *In re Nevitt*, 54 C. C. A. 622: "Proceedings for contempts are of two classes, those prosecuted to preserve the power and vindicate the dignity of the courts and to punish the disobedeience of their orders, and those instituted to preserve and enforce the rights of private parties to suits, and to compel obedience to orders and decrees made to enforce the rights and administer the remedies to which the court has found them to be entitled. The former are criminal and punitive in their nature, and the government, the courts and the people are interested in their prosecution. The latter are civil, remedial and coercive in their nature, and the parties chiefly in interest in their conduct and prosecution are the individuals whose private rights and remedies they were instituted to protect and enforce. *Thompson* v. *Railroad Co.*, 48 N. J. Eq. 105, 108, 21 Atl. Rep. 182; *Hendryx* v. *Fitzpatrick* (C. C.), 19 Fed. Rep. 810; *Ex parte Culliford*, 8 Barn. & C. 220; *Rex* v. *Edwards*, 9 Barn. & C. 652; *People* v. *Court of Oyer and Terminer*, 101 N. Y. 245, 247, 4 N. E. Rep. 259, 54 Am. Rep. 691; *Phillips* v. *Welch*, 11 Nevada, 187, 190; *State* v. *Knight*, 3 S. Dak. 509, 513, 54 N. W. Rep. 412, 44 Am. St. Rep. 809; *People* v. *McKane*, 78 Hun. 154, 160, 28 N. Y. Supp. 981; 4 Bl. Comm. 285; 7 Am. & Eng. Ency. Law, 68.

A criminal contempt involves no element of personal injury. It is directed against the power and dignity of the court, and private parties have little if any interest in the proceedings for its punishment. But if the contempt consists in the refusal of a party or a person to do an act which the court has ordered him to do for the benefit or the advantage of a party to a suit or action pending before it, and he is committed until he complies with the order, the commitment is in the nature of an execution to enforce the judgment of the court, and the party in whose favor that judgment was rendered is the real party in interest in the proceedings." In *Bessette's Case,* Bessette was not a party to the suit in which the injunction was granted, but, with knowledge of the restraining order, he violated the injunction and was fined $250 by the circuit court for contempt. From the judgment and order imposing the fine he prayed an appeal to the circuit court of appeals, and the question to be determined by the Supreme Court was whether the circuit court of appeals could review an order of a district or circuit court in contempt proceedings. After quoting the above statement of JUDGE SANBORN, MR. JUSTICE BREWER said: "Doubtless the distinction referred to in this quotation is the cause of the difference in the rulings of various state courts as to the right of review." The Supreme Court held that, as Bessette was not a party to the suit, his case came more fully within the punitive than in the remedial class, and that as the Act of March 3, 1891, establishing circuit courts of appeals, gave those courts jurisdiction to review decisions of the district courts and the existing circuit courts in criminal cases, the circuit court of appeals had jurisdiction to review the judgment against Bessette, and in stating its conclusion said: "Considering only such cases of contempt as the present—that is, cases in which the proceedings are against one not a party to the suit, and cannot be regarded as interlocutory—we are of opinion that there is a right of review in the circuit court of appeals. Such a review must, according to the settled law of this court, be by

writ of error. * * * On such a writ only matters of law are considered. The decision of the trial tribunal, court or jury, deciding the facts, is conclusive as to them." In the case of *Matter of Christensen Engineering Co.*, 194 U. S. 458, the defendant in a suit for injunction, &c., was adjudged guilty of contempt for disobeying a preliminary injunction and ordered to pay a fine of $1,000, one-half to the United States and the other half to the complainant. On a petition for a mandamus commanding the circuit court of appeals to take jurisdiction of a writ of error by which the petitioner sought to have the action of the circuit court adjudging him guilty of contempt, reviewed, the Supreme Court held, quoting from the syllabus, "Where an order imposing a fine for a violation of an injunction is substantially one to reimburse the party injured by the disobedience, although called one in a contempt proceeding, it is to be regarded as merely an interlocutory order, and to be reviewed only on an appeal from the final decree. Where, however, the fine is payable to the United States and is clearly punitive, and in vindication of the authority of the court, it dominates the proceeding and is reviewable by the circuit court of appeals on writ of error, *Bessette* v. *W. B. Conkey Co.*, 194 U. S. 324, and the court should take jurisdiction." The distinction between civil and criminal contempts was again considered in *Gompers* v. *Bucks Stove and Range Co.*, 221 U. S. 418, where Samuel Gompers and others were adjudged guilty of contempt for violating an injunction, and ordered to be confined in the United States jail of the District of Columbia for a certain term. Mr. Justice Lamar there said: "It is not the fact of punishment but rather its character and purpose that often serve to distinguish between the two classes of cases. If it is for civil contempt the punishment is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court. It is true that punishment by imprisonment may be remedial, as well as punitive, and many civil contempt pro-

ceedings have resulted not only in the imposition of a fine, payable to the complainant, but also in committing the defendant to prison. But imprisonment for civil contempt is ordered where the defendant has refused to do an affirmative act required by the provisions of an order which, either in form or substance, was mandatory in its character. Imprisonment in such cases is inflicted not as punishment, but is intended to be remedial by coercing the defendant to do what he had refused to do. The decree in such cases is that the defendant stand committed unless and until he performs the affirmative act required by the court's order.

"For example: If a defendant should refuse to pay alimony, or to surrender property ordered to be turned to a receiver, or to make a conveyance required by a decree for specific performance, he could be committed until he complied with the order. * * * The order for imprisonment in this class of cases, therefore, is not to vindicate the authority of the law, but is remedial and is intended to coerce the defendant to do the thing required by the order for the benefit of the complainant. If imprisoned, as aptly said in *In re Nevitt,* 117 Fed. Rep. 451, 'he carried the keys of his prison in his own pocket.' He can end the sentence and discharge himself at any moment by doing what he had previously refused to do.

"On the other hand, if the defendant does that which he has been commanded not to do, the disobedience is a thing accomplished. Imprisonment cannot undo or remedy what has been done nor afford any compensation for the pecuniary injury caused by the disobedience. If the sentence is limited to imprisonment for a definite period, the defendant is furnished no key, and he cannot shorten his term by promising not to repeat the offense. Such imprisonment operates, not as a remedy coercive in its nature, but solely as punishment for the completed act of disobedience. * * * In this case the alleged contempt did not consist in the defendant's refusing to do an affirmative act required, but rather in doing that

which had been prohibited. The only possible remedial relief for such disobedience would have been to impose a fine for the use of the complainant, measured in some degree by the pecuniary injury caused by the act of disobedience."

In that case the petition in the contempt proceeding contained a prayer for remedial relief, while the court, instead of granting the only remedial relief that could have been given in such a case, namely, a fine payable to the complainant, imposed the punitive sentence of imprisonment appropriate only in a proceeding for criminal contempt, and the Supreme Court said: "The result was as fundamentally erroneous as if in an action of 'A vs. B. for assault and battery' the judgment entered had been that the defendant be confined in prison for twelve months." The Court held that the fact that the petition in the contempt proceeding contained a prayer for remedial relief was a "controlling fact" and decisive of the character of proceeding as one in equity for civil contempt.

Again, in the case of *Re Merchants' Stock Co., Petitioner*, 223 U. S. 639, where the petitioners for a writ of mandamus had been adjudged guilty of contempt for violating an interlocutory injunction and ordered to pay certain fines, and the question was whether the order was open to review, the Supreme Court said: "The answer turns upon the character of the order. If it was remedial, it was merely interlocutory and reviewable only upon appeal from the final decree, but if it was punitive, it was a final judgment, criminal in its nature, and reviewable upon a writ of error, without awaiting a final decree. Such an order is deemed remedial when its purpose is to indemnify the injured suitor or coercively to secure obedience to a mandate in his behalf, and is deemed punitive when its purpose is to vindicate the authority of the court by punishing the act of disobedience as a public wrong."

The same distinction between civil and criminal contempts is stated in *Staley v. South Jersey Realty Co.*, 83 N. J. Eq. 300, decided in 1914, where the court held that by the Act of

1909 the legislature of New Jersey had given the right of appeal in criminal contempts. Prior to that act, the courts of New Jersey held that an order passed merely to punish the party was not reviewable, the court in *Grand Lodge K. P. of New Jersey v. Jansen,* 62 N. J. Eq. 737, saying: "As a mere punishment for contemptuous conduct, the order being within the jurisdiction of the court of chancery, is not appealable, but, so far as it is for the relief of the suitor, it is subject to appeal." In 7 *Am. & Eng. Ency. of Law,* 29, and 13 *C. J.* 7, it is said: "If the contempt consists in doing a forbidden act, injurious to the opposite party, the contempt is considered criminal."

The precise question has not been considered or decided by this Court. It appears from the printed report of the early case of *State v. Stone et al.,* 3 H. & McH. 115, that the general court fined the chief justice and associate justice of the Charles County court for contempt for refusing to obey a writ of *certiorari,* and that they prayed an appeal to the court of appeals, which the general court refused to grant. In the syllabus, that case is treated as authority for the statement: "An appeal does not lie from an order imposing a fine for contempt of court." In the case of *Williamson v. Carnan,* 1 G. & J., 184, the chancellor, on a motion to dissolve an injunction, ordered that the injunction be continued until final hearing; that the defendant remove obstructions placed on a certain road mentioned in the proceedings, and that he pay a fine of fifty dollars for not obeying the preliminary injunction in the case. From this order and other orders in the case, including the order directing the injunction to issue, the defendant appealed, and in overruling a motion to dismiss the appeal CHIEF JUDGE BUCHANAN said: "The order of the Commissioners of Baltimore County, on the 13th of December, 1827, confirming the report of the commissioners appointed by the levy court of that county, and directing and authorizing the old road to be shut up, placed the premises over which it formerly run, under the control of the appellant

to whom the land belonged, and gave him the same right of user of the land of that road, that he had of the rest of his estate.    And we think that the subsequent order of the court of chancery, does so materially affect the right and interests of the appellant as to bring the case within the principle of *Thompson* v. *McKim,* heretofore decided by this Court, and form a fit subject of appeal." The order referred by the the Court as affecting the material interests of the appellant and being a fit subject of appeal was evidently the order requiring him to remove the fence and other obstructions from the bed of the old road, which land, the Court held, had been restored to him by the action of the County Commissioners confirming the report of the commissioners appointed by the levy court, and the decision has no bearing upon the question we are here considering.    The case of *ex parte Maulsby,* 13 Md. 625, was a *habeas corpus* case, and the question of the right of appeal in cases of civil or criminal contempt was not involved.    In the case of *Longley* v. *McGeoch,* 115 Md. 182, the appeal was "from a decree of the Circuit Court of Baltimore City, making perpetual an injunction previously granted by that Court, and also adjudging both defendants to be guilty of contempt in violating the terms of the preliminary injunction outstanding, and ordering that the defendant corporation forfeit and pay a fine of one hundred dollars as a penalty for having violated said injunction." No question was made as to the right to review that part of the decree punishing the defendant for contempt, and JUDGE PEARCE, speaking for the Court, in affirming the decree, simply said in reference to it: "We must concur in the action of the Court in this respect also." In that case, as in *Williamson* v. *Carnan, supra,* the order imposing the punishment for contempt was a part of an order or decree from which there was a right of appeal, and the question whether an appeal lies from an order punishing a party for criminal contempt was not considered.

Applying the distinction clearly and forcibly pointed out by the authorities and decisions referred to, and from which we have quoted, it is clear that the record in this case presents a case of criminal contempt. The offense of which the appellants were adjudged guilty consisted in the doing of an act forbidden by the writ of injunction previously issued, and the sentence or punishment imposed was not remedial, but distinctly punitive. There is nothing in the contempt proceeding set out in the record indicating that the parties treated it as a proceeding in equity for civil contempt; there was no petition praying for remedial relief, the fines were not made payable to the parties injured by the disobedience, and the only purpose of the order imposing the fines was to vindicate the authority of the court by punishing the act of disobedience. The contempt proceeding must therefore be regarded as independent of the equity case in which the injunction was granted, and as a proceeding in law for criminal contempt. *Matter of Christensen Engineering Co., supra; Bessette* v. *W. B. Conkey Co., supra; Compers* v. *Bucks Stove and Range Co., supra.* See also *Binney's Case,* 2 Bland, 99.

There is no statute in this State expressly providing for appeals in contempt cases, and under the common-law rule, the decision of the general court in *State* v. *Stone, supra,* and the decisions in a number of other states (*People, ex rel. etc.* v. *Gilmore,* 88 N. Y. 626; *Hurley* v. *Commonwealth,* 188 Mass. 443; *Grand Lodge, K. P. of New Jersey,* v. *Jansen et al., supra; Staley* v. *South Jersey Realty Co., supra*), the order appealed from is not subject to review by this Court.

On the other hand, if we apply the view adopted by the Supreme Court of the United States that the question of the right of appeal in cases of criminal contempt must be determined by reference to the provisions of our statute providing for appeal in criminal cases, the result would be the same in this case. The section of the Code authorizing appeal in criminal cases is section 80 of article 5, which provides: "The parties to criminal proceedings shall be entitled to bills

of exceptions in the same manner as in civil proceedings, and appeals from judgments in criminal cases may be taken in the same manner as in civil cases," etc. In the case of *Mitchell* v. *State,* 82 Md. 527, the Court held that no appeal lies under that section from a judgment or sentence of the court unless there is a bill of exceptions, and said: "By this act, when an appeal is taken in a criminal case, the proceedings are to be the same as in a civil case. By the express provisions of the statute law, this Court in a case on the civil side of the docket is prevented from deciding any point or question which does not plainly appear by the record to have been tried and decided in the court below. Code, art. 5, sec. 9. The point must be made, and in a case requiring an exception, a bill of exceptions must be taken." There are no bills of exception in this case, and if the section of the Code referred to could be held to authorize appeals in cases of criminal contempt, the present appeal would have to be dismissed for the reasons stated in *Mitchell* v. *State, supra.* There can be no question of the power of the court below to pass such an order. As said in *Bessette* v. *W. B. Conkey Co., supra,* "The power to punish for contempt is inherent in all courts," and in *Ex parte Maulsby, supra,* JUDGE BARTOL said: "A contempt is an offense at common law; it is not created by the Act of 1853 (Code, sec. 4, art. 26), nor is the jurisdiction to punish it conferred by that act alone. It is an offense against the court, as an organ of public justice. The right of punishing for contempts by summary conviction is inherent in all courts of justice and legislative assemblies, and is essential for their protection and existence. It is a branch of the common law, adopted and sanctioned by our State Constitution. *Yates' Case,* 9 Johns, 417." But in addition to this inherent power, section 78 of article 16 of the Code provides: "If any person against whom an injunction has been issued shall violate the same after service thereof, or shall permit or connive at the violation thereof by any other person, the court, on notice of such violation, may issue an attachment for contempt against such person; and if on proof the party

is adjudged guilty of the contempt, he may be fined or imprisoned, or both, in the discretion of the court," and sections 79, 173 and 190 contain further provisions for the enforcement by courts of equity of their decrees and orders.

The fact that the writ of injunction was served on Kelly and his wife on a legal holiday did not render the contempt proceedings void (*Handy* v. *Maddox,* 85 Md. 547), and there is no force in the objections that the injunction was not served by the sheriff or depty sheriff of Baltimore City on the 11th of November, 1921, and that Collison was not a party to the injunction suit. The evidence shows, and the court below found that, with knowledge of the injunction, they wilfully violated it. *Bessette* v. *W. B. Conkey Co., supra,* 14 R. C. L., p. 471, sec. 171; 22 *Cyc.* 1013.

If the order appealed from could be reviewed by this Court, we should not hesitate to affirm it, but it follows from what has been said that the appeal must be dismissed

*Appeal dismissed, with costs.*