# EDWARD L. HITZELBERGER *v.* STATE OF MARYLAND

[No. 84, October Term, 1937.]

*Decided January 13th, 1938.*

The cause was argued before BOND, C. J., URNER, OF-FUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Milton H. Talkin,* with whom was *Bernard Manekin* on the brief, for the appellant.

*Hilary W. Gans, Deputy Attorney General,* and *William H. Maynard, Deputy State's Attorney for Baltimore City,* with whom was *Herbert R. O'Conor, Attorney General,* on the brief, for the State.

SLOAN, J., delivered the opinion of the Court.

This appeal is from a sentence of fine and imprisonment imposed on Edward L. Hitzelberger, a lieutenant of police of Baltimore, charged by the state's attorney of

Baltimore City with interference by the officer with a member of the grand jury then pursuing an investigation in which Hitzelberger was interested.

The charge was of constructive contempt, and the procedure was in conformity with the provisions of the Acts of 1927, ch. 357 (Code [Supp. 1935] art. 5, sec. 105). The charge preferred by the state's attorney whose duty it was to prosecute the charge under the Act of 1927, was (1) that on the 15th day of July, 1937, at the May term, 1937, the grand jury began an investigation of the vice conditions and their ramifications in the City of Baltimore, and that among the members of the grand jury was G. Frederick Fluegel; (2) that on the evening of July 22nd, 1937, the said Hitzelberger and the said Fluegel met at a certain lodge of which both were members, and that the said Hitzelberger "then and there attempted to obstruct justice and interfere with the processes" of the criminal court "by interfering with the said G. Frederick Fluegel, and discussing with him the said investigation by the grand jury in regard to vice conditions and their ramifications in Baltimore City, and suggested ways and means of producing before the said Grand Jury evidence favorable to the said Edward L. Hitzelberger"; and (3) that said acts and conduct of the said Edward L. Hitzelberger were improper and in contempt of said court. Attached to and made part of the petition or information was an affidavit of Mr. Fluegel, which contained a repetition of the facts already stated, and, in addition, the appellant "approached the said G. Frederick Fluegel and discussed with him the charges then under investigation against him, the said Edward L. Hitzelberger before the said Grand Jury." The judge of the criminal court thereupon passed an order on Edward L. Hitzelberger to appear one week later, July 30th, 1937, with the privilege of counsel, and show cause why he should not be adjudged in contempt.

A motion to quash the petition was thereupon filed by the appellant, the reasons alleged being: (1) That the acts charged did not constitute contempt of court; (2, 6)

vagueness and indefiteness of petition and affidavit; (3) that they "do not allege or state facts sufficient to constitute a contempt of court within the purview of article 26, section 4, of the Public General Laws of Maryland"; (4, 5) that the acts alleged did not constitute misbehavior in the presence of the court or so near thereto as to obstruct the administration of justice.

The third reason will be taken up first, because it questions the jurisdiction of the court to hear the complaint. The appellant contends that it cannot be entertained because the charge does not come within the terms of section 4, article 26, of the Code. That section provides that "the power of the several courts of the State to issue attachments and inflict summary punishments for contempt of courts shall not be construed to extend to any cases except the following: (1) the misbehavior of any person or persons in the presence of the said courts, or so near thereto as to obstruct the administration of justice" and six other kinds of misconduct for which the courts can inflict summary punishment, but none of them resemble the offense with which the appellant is here charged. This is the Acts of 1898, ch. 31, and is an enlargement of the Acts of 1853, ch. 450, sec. 1, which contained the first three offenses provided for in the Act of 1898. What the appellant asks this court to do is to have it say that, unless the charge is included among the offenses enumerated in section 4 of article 26, he cannot be charged with contempt. The power to punish for contempt is a power inherent in courts under the common law. *Ex parte Maulsby*, 13 Md. 625, 635, appendix; *Kelly v. Montebello Park Co.*, 141 Md. 194, 205, 118 A. 600. Whether the Legislature has the power to limit, extend, or declare contempts has not been decided in this state, and it is not necessary in this case that it be decided, as, in our opinion, the question does not arise. In 6 R. C. L. 524, *Contempt*, sec. 37, it is said, "as a general principle, if the court obtains its powers from the constitution then its power to punish for contempt can be taken away only by constitutional provision, but if it

obtains its powers from the legislature, the legislature may restrict it in this respect as well as in others," and it has been held that the legislature "cannot deprive the courts of the right to punish summarily even constructive contempts; although it may regulate the practice in proceedings for contempt." We say the question does not arise here because section 4 of article 26 defines the seven offenses constituting contempt under that section as direct, otherwise there was no occasion for the Legislature to say "the power" of the courts "to issue attachments and inflict summary punishments for contempt of courts shall not be construed to extend to any cases except" the seven offenses therein defined. Summary proceedings, however, by Code (1935 Supp.) art. 5, sec. 105, Acts of 1927, ch. 357, are confined to "direct contempt, alleged to have been committed in the presence of the Court, or so near to the Court as to interrupt its proceedings," and the section prescribes the procedure in case of constructive contempt, which was strictly followed in this case. There is no need to reconcile these statutes, or to express an opinion of the power of the Legislature in the matter of contempts until presented in a proper case. What we say now is that this is a case of constructive contempt, which the Legislature has not undertaken to construe, define, or forbid. It did, however, prescribe the procedure in cases of constructive contempt, and in doing so merely followed the law as already existing and generally observed. In *Rapalje on Contempts* it is said: "Direct contempt may be summarily punished by order of the presiding judge, after such a hearing as he may deem just and necessary; but constructive contempts, though equally punishable, yet require a different and less summary process." Sec. 13 *C. J.* 64; 6 *R. C. L.* 501, sec. 13, *Contempt; In re Lee,* 170 Md. 43, 183 A. 560, and the cases therein cited.

The substantial change in the law made by the Legislature in the Acts of 1927, ch. 357, was to provide for an appeal in all cases of contempt, recognized and not ques-

tioned in the cases of *Ex parte General News Bureau,* 162 Md. 643, 648, 161 A. 259, and *Ex parte Bowles,* 164 Md. 318, 165 A. 169.

The first, second, and sixth reasons may be considered together, and they are, Is the offense as charged sufficiently clear and definite, and, if so, is it a contempt for one who is not a member of a grand jury or one who is under investigation by it to attempt to influence its action?

That the grand jury is an important function of the court in the administration of the criminal law cannot be debated; its members are selected by the court in the manner provided by law, are sworn in the presence of the court, and the results of its deliberations reported to the court in the forms of presentments and indictments; during their sessions they are free to call upon the court for guidance and advice, and they can only be relieved of their duties and discharged by the court. *Commonwealth v. McNary,* 246 Mass. 46, 140 N. E. 255. In the able opinion of the late Judge Digges, in *Re Report of Grand Jury,* 152 Md. 616, 621, 137 A. 370, 372, its importance was expressed when he said: "the grand jury has been continued and preserved as an institution necessary for the preservation of the peace, good order, and dignity of the state in bringing to trial those guilty of violations of law, and in protecting people from being put on trial upon frivolous, unfounded, or false accusations"; and quoting from *Blaney v. State,* 74 Md. 153, 156, 21 A. 547: "However restricted the functions of grand juries may be elsewhere, we hold that in this state they have plenary inquisitorial powers, and may lawfully themselves, and upon their own motion, originate charges against offenders though no preliminary proceedings have been had before a magistrate, and though neither the court nor the state's attorney has laid the matter before them. The peace, the government, and the dignity of the state, the well-being of society, and the security of the individual demand that this ancient and important attribute of a grand jury should not be narrowed or interfered with

when legitimately exerted." "Their investigations shall be carried on secretly and free from outside interference or influence; and great care is taken that they shall be so carried on." *Coblentz v. State,* 164 Md. 558, 566, 166 A. 45.

Although the question is new in this court, it has been held in other jurisdictions that it is a contempt to attempt to interfere with or influence the action of a grand jury in any matter which is or may be the subject of its investigation, no matter whether the offense is committed in or about the courthouse, or at places remote therefrom. 13 *C. J.* 23, sec. 27; 6 *R. C. L.* 500. No matter where it happens, "its influence upon the administration of justice is precisely the same in both cases." *McCaully v. United States,* 25 App. D. C. 404; *Pierce v. United States,* 37 App. D. C. 582, *certiorari* denied 223 U. S. 732, 32 S. Ct. 528, 56 L. Ed. 634. A fully discussed case of the solicitation of an interested party to appear in his defense before a grand jury is *Commonwealth v. McNary,* 246 Mass. 46, 140 N. E. 255, 256, where the court held that one who wrote a letter to a grand jury asking that he be called as a witness had been properly adjudged guilty of contempt. *United States v. Kilpatrick* (D. C.) 16 Fed. 765, 769; *Harwell v. State,* 10 Lea (Tenn.) 544.

From the relation of the actions, duties, and functions of a grand jury to the conduct of the criminal court, as well as from the well-recognized authorities which have been cited, any one who attempts to influence the grand jury as individuals or as a whole, in any matter which is or may be the subject of its investigation, is in contempt of the court to which the grand jurors have been summoned.

The contention that the state's attorney's complaint and Mr. Fluegel's affidavit were vague and indefinite is not well founded. All the statute, Code, (Supp. 1935) art. 5, sec. 105, Acts of 1927, ch. 357, requires, is that "if any such alleged contempt be a constructive contempt, alleged to have been committed not in the presence of the Court, or not so near to the Court as to interrupt

its proceedings, then the Court shall issue a citation to the person alleged to be in contempt, requiring such person to show cause why an order adjudging such person in contempt should not be passed within a time named therein." The information, affidavit, and citation did not say in terms whether the offense was committed in or out of the presence of the court, but in this case the omission is not material, as the information and affidavit, both of which were served on the appellant, said the solicitation of the grand juror by the appellant was made at a meeting of a lodge of which both were members; that Hitzelberger suggested to the grand juror ways and means whereby evidence favorable to him might be produced before the grand jury which was investigating him in connection with vice conditions in Baltimore. In view of these allegations, the appellant cannot be heard to say that he was not aware of the charge which he was called on to answer.

The fourth and fifth reasons for the motion to quash have already been answered by the decision that this is a constructive contempt.

The motion to quash having been overruled, a decision in which this court concurs, the appellant filed an answer in which he denied that he attempted to obstruct justice or interfere with the processes of the court, or that he said anything to G. Frederick Fluegel with any corrupt or willful intent of influencing his action as a grand juror, or with any idea or thought of doing anything in contempt of the court. He admitted that he had talked to Mr. Fluegel at the lodge meeting on July 22nd, 1937, but denied that he approached him, but on the contrary asserted "that the said G. Frederick Fluegel approached the defendant and by his manner and action invited the defendant to speak to him." He also contended in his answer that, as the charge did not come within the provisions of section 4 of article 26 of the Code, the facts set forth in the petition and affidavit did not constitute contempt, a contention which we have already discussed and rejected.

A hearing was had in conformity with the provisions of section 105 of article 5 in cases of constructive contempt, and according to the procedure already approved by this court in *Re Lee,* 170 Md. 43, 183 A. 560; *Cooke v. United States,* 267 U. S. 517, 45 S. Ct. 390, 69 L. Ed. 767; *In re Savin,* 131 U. S. 267, 9 S. Ct. 699, 33 L. Ed. 150; *Kelly v. Montebello Park Co.,* 141 Md. 194, 118 A. 600.

In respect to the contention that he had no thought or idea that in talking to Mr. Fluegel he would be in contempt, or that he had any intent, corrupt or willful, of influencing his action as a grand juror, his twenty-six years' experience on the Baltimore police force should have taught him otherwise. He ought to have known, as every citizen is presumed to know, that the grand jury is an investigating body, and, if its investigations result in an indictment, an accusing body, though anciently it was not only a body of accusers but of triers as well. 28 *C. J.* 763. If the charges here made be true, then what the appellant did was to attempt to get into the grand jury room witnesses favorable to him, in answer to the charges which he had heard were being made against him, "thus changing the institution of a grand jury to that of a traverse jury; by which the whole merits of the case may be decided in a private, instead of a public, tribunal." *Comm. v. McNary, supra.* As we have already said, such conduct is a contempt of court.

The appellant had not attended his lodge for a considerable time; Mr. Fluegel said a year and a half; one other witness said two or three months; but Mr. Fluegel was the secretary of the lodge, and his source of information was superior to that of a witness who was guessing at it. He said that, after the adjournment of the meeting, the appellant came to his desk, and said he wanted to talk to him, and, among other things, "said he was innocent and that some one was framing him up," and gave him a list of four witnesses who, he said "could testify in his behalf." A week before this incident the appellant suggested to Samuel Klioze, a member of the same lodge,

that he see Mr. Fluegel in his behalf, and Klioze, with another member, Larry B. Cotton, made two unsuccessful efforts to see him, and later, but before the meeting of July 22nd, Cotton talked to Fluegel on the telephone and was told by him that he was under oath and would not listen to anybody, and he so reported to Klioze and Hitzelberger, but not until after the meeting. None of this was contradicted, and was sufficient evidence for the court to conclude that both contacts with Mr. Fluegel were initiated by the appellant, and that the appellant was guilty of the contempt as charged.

The appellant also contends that in such a case as was here preferred he can only be proceeded against by indictment, and should have been charged, if at all, with the violation of section 33, article 27, of the Code, which provides: "If any person shall corruptly or by threats or force endeavor to influence, intimidate or impede any juror, witness or officer in any court of this State in the discharge of his duty, * * * he shall be liable to be prosecuted therefor by indictment," etc. We express no opinion as to whether, on the facts in evidence, he was guilty of the violation of this statute. The rule with respect to this contention is stated in 13 *C. J.* 55, sec. 77, and is: "In the absence of constitutional or statutory restriction, a court has power to punish an act which is a contempt notwithstanding such act may likewise be punished by indictment." See the cases of *In re Savin*, 131 U. S. 267, 9 S. Ct. 699, 33 L. Ed. 150, *Cartwright's Case*, 114 Mass. 230, 239, and other cases there cited, with which we agree. We do not decide, however, that the Legislature can substitute an indictable offense for what is a contempt, and thus abolish the latter. 6 *R. C. L.* 524, 525, *Contempt*, sec. 37.

The appellant complains that the sentence of a fine of $100 and sixty days in jail is excessive. In our opinion, the sentence is not out of proportion to the seriousness of the offense.

*Judgment affirmed, with costs.*