## SHEETS *v*. CITY OF HAGERSTOWN ET AL.

[No. 75, October Term, 1953.]

*Decided February 12, 1954.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Francis H. Urner* for appellant.

*Edward Oswald, Jr.*, and *Omer T. Kaylor* for appellees.

HAMMOND, J., delivered the opinion of the Court.

The Circuit Court for Washington County, on petition of the City of Hagerstown, ordered Arthur W. Sheets to show cause why he should not be held in contempt for violating its injunction against operating or maintaining a parking lot in an area zoned against such use. A motion to quash was overruled. After hearing the case on answer and testimony, the Court held Sheets in contempt and fined him $500.00. This appeal followed.

Neither below nor in this Court was the point made that the case on the merits should have been tried before a Judge other than the one who issued the show cause order. In the motion to quash, it is contended that the City had consented to the use of the property for the parking of cars, or, in the alternative, was estopped to question such use because it authorized the construction of a building on part of the property, the grading and paving of the rest, and the opening of two new driveways from adjoining streets. Sheets alleged that the petition of the City: ". . . does not constitute a sworn complaint, indictment, sworn charge, affidavit or

particularized written statement . . .", which advises him of the specific acts alleged to have constituted the contempt. He said that the order of court directing him to show cause why he should not be adjudged in contempt was unsupported by any such writings. For these reasons, he urged that if he were called upon to answer the rule to show cause, the rights guaranteed him under the Fifth and Fourteenth Amendments of the Constitution of the United States and under Articles V, XXI, XXII and XXIII in the Declaration of Rights of the Constitution of Maryland would be violated.

The answer, filed after his motion to quash was overruled, reserved and reiterated all defenses made under the motion to quash, admitted knowledge of the injunction issued against him and denied its violation. A further defense in the answer was that: ". . . because of the suitability and accessibility of your defendant's property for the purpose of automobile parking . . . many persons occasionally drive their automobiles upon and park on said property without the authority or consent, directly or indirectly, of your defendant, and that said persons are trespassers upon said property."

Reliance on the Constitutional provisions cited in the motion to quash seemingly amounts to a defense that due process in criminal contempt proceedings requires, as a matter of law, indictment by a Grand Jury and a right to a trial by jury or, at the least, a duly particularized charge, sworn to or supported by affidavit preliminary to trial by the Court. All the contentions which make up this defense must be answered adversely to the appellant. In upholding a conviction of contempt by a Judge, the case of *In Re Lee*, 170 Md. 43, said this: "Criminal contempts at times were dealt with at common law by presentment, indictment, and trial, as were other misdemeanors, and they were so regarded, but this did not deprive the court whose dignity had been assailed, or authority frustrated, of the right to deal with contempts of all classes, in accordance with the rules and procedures recognized since ancient times by the common

law." In *Hitzelberger v. State,* 173 Md. 435, it was argued that the offense which constituted the contempt, found by the Court alone, was a statutory crime so that the contemnor could only be proceeded against under the statute after indictment, which if true would have afforded the right to a jury trial. It was held that the Court could punish summarily as contempt an act which also was a crime punishable by indictment. In *Eilenbecker v. Plymouth County Dist. Ct.,* 134 U. S. 31, 33 L. Ed. 801, the Supreme Court held that a proceeding in a State Court by which a fine and imprisonment are imposed for contempt in violating the injunction of the court, without indictment or trial by jury, conforms to due process of law, since it is the exercise of one of the traditional powers necessarily incident to a court of justice. *United States v. United Mine Workers of America,* 330 U. S. 258, 91 L. Ed. 884, held both that form is not vital in the accusation of the alleged contemnor and that unless an applicable statute requires otherwise expressly, a charge of criminal contempt is properly tried by the court without a jury. See also on both points *Bowles v. United States,* 50 F. 2d 848 (4th Circuit) ; and compare *Michaelson v. United States,* 266 U. S. 42, 69 L. Ed. 162.

The result reached in these cases flowed naturally from the nature of contempt and the concept the law holds of it.

A contempt was, at common law, and now is, an offense against the court as an organ of justice. The right to punish its commission by summary conviction not only is inherent in the Courts but is essential for their protection and existence. *Ex Parte Maulsby,* 13 Md. 625; *Kelly v. Montebello Park Co.,* 141 Md. 194; *Ex Parte Sturm,* 152 Md. 114; *In Re Lee,* and *Hitzelberger v. State, supra; Freedman v. State,* 176 Md. 511; *Baltimore Radio Show, Inc. v. State,* 193 Md. 300; and *Donner v. Calvert Distillers Corp.,* 196 Md. 475. The Legislature has passed statutes from time to time which are either declaratory of the common law or regulate

the mode of exercise of the power of the court. The procedure followed in the instant case, not only does not affront any of these statutes, but actually is as expressly authorized by them. Section 4 of Article 26 of the Code of 1951 was enacted in 1853, and its title described the act as "Declaratory of the Law Concerning Contempts of Court". It provides that courts of the state may issue attachments and inflict summary punishments, among other things, for the disobedience of a party to any lawful decree of the court. Section 95 of Article 16 of the Code provides that if any person, against whom an injunction has been issued, shall violate its terms: ". . . the court, on notice of such violation, may issue attachment for contempt against such person; and if on proof the party be adjudged guilty of the contempt, he may be fined or imprisoned, or both, in the discretion of the court." Section 108 of Article 5 of the Code provides that in cases of constructive contempt: ". . . committed not in the presence of the Court, or not so near to the Court as to interrupt its proceedings, . . ." the Court shall issue a citation to the person alleged to be in contempt to show cause why he should not be so adjudged, and ". . . the matter tried by the Court without a jury. . ."

It is plain that whether a contempt be civil or criminal, direct or constructive, the requirements of due process are satisfied if one accused is informed of the charge against him and given a fair and reasonable opportunity to present, and have an unprejudiced consideration of, his defense. *In Re Lee, Kelly v. Montebello Park Co.,* and *Donner v. Calvert Distillers Corp.,* all *supra; Cooke v. United States,* 267 U. S. 517, 69 L. Ed. 767; and *Bowles v. United States, Eilenbecker v. Plymouth County Dist. Ct.,* and *United States v. United Mine Workers of America,* all *supra.* The procedure followed in this case fully met the necessary constitutional, statutory and common law standards. The recitals in his pleadings, the prior litigation and his testimony are the best answer to Sheets' claim that he was not fully informed of the

acts which flouted the order of the court, and for which he was cited.

On the merits Sheets argues that he was tried for criminal contempt in which the proof must be of a higher degree than in civil contempt—must show intentional violation of the court's order by clear and convincing proof, if not beyond a reasonable doubt,—and that the proof here falls far short. Undoubtedly criminal contempt must be shown by clear and satisfactory proof, and some courts hold must be shown beyond a reasonable doubt. *In Re Lee, supra,* at page 52 of 170 Md., and cases there cited. The Court below held the contempt in this case to be civil. The line between civil and criminal contempt is often indistinct. Often the same acts or omissions may constitute both or at least embrace aspects of each. *Kelly v. Montebello Park Co.* and *Donner v. Calvert Dist. Corp., supra,* held the doing of that prohibited by injunction to be criminal contempt. There is little, if any, distinction between those cases and this case. We deem it unnecessary to label the contempt of which Sheets was found guilty, because we think that the evidence before the lower court was clear, convincing and satisfying beyond doubt that he used and maintained the lot as a parking area in deliberate and intentional defiance of the court's injunction not to do so.

In September, 1950, Sheets purchased an apartment building in Hagerstown, which, like the other buildings in the block, was built on a high ridge which ran along the west end of the lot, leaving extensive front yards and shallow, if any, back yards. At the time of the purchase, there were no zoning laws or deed covenants which restricted the use of the property, and Sheets proposed to lease his rather extensive front yard area to the A. & P. Co. as a parking lot for employees and patrons of its supermarket directly across the street. He was the District Supervisor of that store, among others. At the time, the City of Hagerstown was considering the adoption of a comprehensive zoning law,

and on September 15, 1950, it passed a temporary zoning ordinance which was applicable to the property involved and which prohibited the erection, construction, operation or maintenance of automobile parking lots. Sheets had begun to clear and grade the front yard area to prepare it for a parking lot, but several weeks later, on October 2, the City filed its bill of complaint, citing the passage of the ordinance and asking that Sheets be enjoined from continuing the construction of the parking lot and: ". . . from operating and maintaining the automobile parking lot and station at the location aforesaid." An order to show cause why the relief prayed should not be granted was served on Sheets and the work was stopped. About a year later, a comprehensive zoning ordinance was finally passed and the City filed a supplemental bill of complaint, basing the relief it sought on the new ordinance. Hearing was held on the bill and answer, and on February 13, 1952, the Court issued its injunction enjoining Sheets: ". . . from operating and maintaining an automobile parking lot or station upon the real estate mentioned in said cause. . ." Several months thereafter, Sheets submitted for approval plans and specifications for an office and service building on part of the lot. The plot plan then showed a stone driveway U-shaped, twenty feet wide, for tenants of the proposed building. In April, 1952, a permit was issued for the building, which was challenged by nearby property owners. The Board of Zoning Appeals upheld the issuance of the permit and its action was affirmed by the Circuit Court for Washington County. Sheets then completed the office building and graded and paved the front yard area. He had proposed that there be two entrances to the front of the lot from North Potomac Street to serve both sides of the front yard area. The City Council of Hagerstown limited him to one entrance from Potomac Street but permitted a second from Charles Street along the northern side of the property.

In October, 1952, when the entrances were completed and the lot paved, Sheets filed a bill for a declaratory

decree to determine whether the zoning ordinance prohibited incidental parking for cars of the tenants in the apartments and office building, who owned a total of twenty cars. A hearing was held on the bill and answer, and soon thereafter, the Circuit Court for Washington County dismissed the bill. In its opinion, the Court said that it had not only enjoined the use of the property as a parking lot, but in the case which upheld Sheets' right to construct the office building, had warned him that the area which was not built on, could not be used as a parking lot. It then said: "Thereafter, in the face of the injunction and this warning, the complainants herein proceeded to level the front yard and fill it with crushed stone covered by black top, leaving an island ten feet wide and one hundred feet long, which is unsurfaced. This the complainants herein choose to call a driveway, although more than ninety per cent of the area, which was formerly the front lawn is paved. . . As presently set up the lot has facilities for the parking of forty-five cars. By no stretch of the imagination could this be called a driveway. It is intended as a parking lot for patrons of the A. & P. store and if permitted, will be so used. In cases such as this, courts of equity look past form to substance. It is a parking lot and not a driveway. I think that an unattended parking lot, such as this, in many respects, is more objectionable than one where a fee is charged for parking as in the latter case the area is policed to some extent. . . Nothing is added to the petitioners' case by putting up a sign or signs marked 'Private Driveway for Tenants and office use only'. Mere words on a sign do not help to keep it from being a parking lot because it is obviously constructed as a parking lot and not as a private driveway. In fact I think it fair to say that the signs are ludicrous and were erected as a sort of 'smoke screen'. This is not really a plan for incidental parking for tenants or users of the offices. It is a 'half baked' plan to establish a parking lot under another name. . . It follows that in my opinion the area in

front of the building owned by the petitioners cannot be used as a parking area as presently constituted and the petition for a declaratory decree will be dismissed."

Some six months later, the City of Hagerstown informed the Court that it believed and averred that: ". . . although the said Arthur W. Sheets had actual knowledge of said injunction issued against him, he has and is now violating the same, . . ." and prayed that he be adjudged guilty of contempt. On June 17, 1953, the court ordered Sheets to show cause why he should not be adjudged according to the petition. After the answer was filed, a hearing was held, at which was considered not only the testimony then taken, but also the testimony that had been heard on the motion to quash. It was shown that the A. & P. store across the street from the lot served some three thousand patrons on Fridays and Saturdays, most of whom came by automobile. Sheets said that many of these would drive over the curb on to the lot, or would either bypass prohibitory signs or move the signs so as to park on the lot. He said further that the City policemen did not stop the parking of the cars, and indeed, encouraged it. The lot measures 80' x 160' and holds some forty-five automobiles. Often it was almost full, with only five or six vacant spaces. Employees of the A. & P. store often carried groceries to cars parked on the lot. These conditions continued down to the time of hearing. The manager of the store testified that Sheets had told him and other employees that, while they should not advise anybody to park on the property, they had no authority to stop people, and that they were to say, if asked, that they had nothing to do with it. The manager told his delivery boys to deliver the groceries wherever the cars were parked, and knew that they were delivering groceries to cars on the lot. He has often seen the lot almost filled with cars. Although at times wooden horses have been placed across the entrance, they were often moved, and none had been so placed for some two months prior to the hearing.

Sheets testified that the only people he gave authority to park on the lot were the tenants of the buildings. When he was asked whether he tried to stop other people from parking on the lot, he replied: "When they would ask me I said there was an injunction on the lot."

The testimony as to the attitude and action of the policemen showed that on one occasion, when there had been a funeral and a co-existing cause of heavy traffic, one police officer had directed people to park on the lot. At other times, police officers had observed the parking and had not stopped it.

It seems entirely clear from the testimony that Sheets had started out with the idea of utilizing the front yard of his property as a parking lot, had never abandoned the idea and was not only entirely willing but anxious that it be used for the benefit of the A. & P. store of which he was in charge. He knew well that it was being so used. With this knowledge, he made no real effort to stop it. It is significant that after the imposition of the fine for contempt, use of the area as a parking lot has stopped completely, which leaves no doubt that it could have been stopped completely as soon as Sheets had really wished it stopped.

Also highly significant is the fact that no appeal was taken from the original decree of February 13, 1952, which prohibited the use of the area as a parking lot. Even more pertinent is the fact that Sheets took no appeal from the order which dismissed his bill for a declaratory decree that he could use the area, as he had been using it, for the parking of cars. With the law of the case thus established, he continued as he had started, or perhaps, accentuated the use of the lot. This constituted wilful violation of the court's orders, and fully warranted the finding that he was in contempt and the imposition of the fine which the court imposed. Indeed, even if the decrees had been appealed and reversed, a finding of contempt for their violation, while they were in effect, would not fall with them. *United*

*States v. United Mine Workers of America, supra; Cassidy et al. v. Puett Electrical Starting Gate Corp.,* 182 F. 2d 604; and *Donner v. Calvert Distillers Corp., supra.*

The claim that the City agreed to the use of the area as a parking lot, or that it is estopped to question such use because it permitted the paving of part of the area as a twenty foot wide driveway, with passage to two streets, is without merit, particularly since prior to such action it had expressly sought an injunction to forbid the use of the area as a parking lot, and after such action, in the suit for declaratory decree, it strongly maintained and defended its original position.

We find that the appellant has no just cause of complaint, either as to procedure or as to substance.

*Order affirmed, with costs.*