712 A.2d 562

Santwan BARKSDALE

v.

STATE of Maryland.

No. 1494, Sept. Term, 1997.

Court of Special Appeals of Maryland.

June 30, 1998.

**394**

Tonya Smith, Student Atty. (Stephen E. Harris, Public Defender and Julia Doyle Bernhardt, Asst. Public Defender, on the brief), Baltimore, for appellant.

Emmet Davitt, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Marna McLendon, State's Atty. for Howard County, Ellicott City, on the brief), for appellee.

Argued before DAVIS, HARRELL and EYLER, JJ.

EYLER, Judge.

Appellant, Santwan Barksdale, was convicted in the Circuit Court for Howard County, non-jury (Dennis M. Sweeney, J.), of criminal contempt for failure to make child support payments to Serleste Holbrook for the support of their minor child. Appellant was sentenced to 180 days imprisonment in the Howard County Detention Center. On appeal to this Court, appellant contends that he was entitled to a trial by jury, that the trial court erred in admitting prior civil contempt orders, and that the evidence was insufficient to support the conviction. Finding no error, we affirm the judgment of the trial court.

### Facts

The State, acting through the State's Attorney for Howard County, filed a petition to hold appellant in criminal contempt for failure to obey a child support order. The order in question was dated June 27, 1995, and provided for child

support in the amount of $672.96 per month, plus $67.29 per month on an arrearage. At trial, the State introduced the June 27, 1995 order, a civil contempt order dated February 12, 1996, a civil contempt order dated May 14, 1996, and an order dated June 26, 1996, which entered judgment against appellant for an arrearage in the amount of $10,114.40. The State also introduced a certified letter from the Department of Social Services, dated September 26, 1997, showing an arrearage as of that date in the amount of $19,891.85, and a certified "wage screen" from the Department of Labor, Licensing & Regulation that showed appellant earned $1,159 in the first quarter of 1996, $1,513 in the second quarter of 1996, and $75 in the last quarter of 1996.

Appellant testified as follows. He was 30 years old and, at the time of trial, was living with his grandparents. On June 12, 1995, he resigned from a position of employment, at which he earned $2,072.55 per month gross wages. He stated that he resigned because his salary was inadequate to meet his obligations. He then began a landscaping business, which he pursued during the day, and assumed ownership of his family's delicatessen, which he pursued during the evening. Neither business succeeded. He made no child support payments from June through December, 1995, because he had no income. By November, 1995, the truck used in his landscaping business had been repossessed, and the landlord had canceled the lease on his delicatessen.

Appellant next found work in March, 1996, when he was employed by Dollar Rental Car. He made a child support payment the following month. By this time, the condominium in which he lived was in a foreclosure proceeding. He filed bankruptcy proceedings under Chapter 13 of the Bankruptcy Code to reorganize his debt, but his plan was rejected by the United States Bankruptcy Court. He lost his job at Dollar Rental Car because of excessive absenteeism and, subsequently, tried to obtain a commercial driver's license. In September, 1996, he was hired as a waiter for a restaurant in Glen Burnie, which did not open until November. He earned $2 an hour plus tips at the restaurant, and he left that job at the end

of the year. He was evicted from his condominium in November. He paid $60 child support in December.

After leaving the restaurant, appellant and a partner began unloading trucks at warehouses, and he earned approximately $150 per week. He made child support payments in January, February, and March, 1997. Appellant's partner cut him out of the business in April, 1997. He began employment with Kinko's in Gaithersburg in June, 1997, earning $8 per hour, and he was so employed at the time of trial. He made support payments after being employed there.

## Questions Presented

Appellant presents the following questions:

1. Whether a defendant in a criminal contempt case is entitled to trial by jury in circuit court under the constitution and laws of Maryland, whether or not he has a federal constitutional right to trial by jury, and whether the failure of the record in this case to show a knowing and voluntary waiver of that right requires reversal.
2. Whether prior judgments of civil contempt are admissible in a prosecution for criminal contempt.
3. Whether the evidence was sufficient to prove criminal contempt.

## Discussion

### 1.

Federal constitutional law provides that a defendant facing imprisonment in excess of 180 days has a right to a trial by jury. *Taylor v. Hayes,* 418 U.S. 488, 495, 94 S.Ct. 2697, 41 L.Ed.2d 897 (1974); *Wilkins v. State,* 293 Md. 335, 338–39, 444 A.2d 445 (1982). With respect to criminal contempt, when there is no maximum authorized penalty, the actual sentence determines whether a defendant has a federal constitutional right to a jury trial. *Codispoti v. Pennsylvania,* 418 U.S. 506, 511–12, 94 S.Ct. 2687, 41 L.Ed.2d 912 (1974); *Wilkins,* 293 Md. at 338–39, 444 A.2d 445. Because appellant was sentenced to 180 days, he concedes that he was not entitled to a

jury trial under the Federal Constitution. Appellant argues, however, that a defendant charged with criminal contempt in circuit court is entitled to a jury trial under the State Constitution and other State laws. He contends that, because he did not knowingly and voluntarily waive his right to a jury trial, his conviction should be reversed. While appellant acknowledges a number of Maryland precedents that support the proposition that a criminal contemnor is not entitled to a jury trial unless he is imprisoned for more than six months, *see, e.g., Whitaker v. Prince George's County,* 307 Md. 368, 514 A.2d 4 (1986) and *Wilkins, supra,* appellant argues that such cases were decided on federal constitutional principles only.

Citing *Thompson v. State,* 278 Md. 41, 359 A.2d 203 (1976), appellant first argues that, "where a defendant is charged with a crime in a court of general jurisdiction, [such as the circuit court,] and where no legislative enactment restricts his right to jury trial, . . . [the defendant] is entitled to the common law mode of trial, *i.e.,* trial by jury." *Id.* at 49, 359 A.2d 203. Without further elaboration, appellant indicates that the Court noted an exception to the general rule for summary proceedings. Appellant concludes that, given that there is no statute restricting the right to trial by jury in cases of constructive criminal contempt, and charges of constructive criminal contempt are not subject to summary proceedings under the Maryland Rules, *see* Rule 15–205 and former Rule P4, defendants charged with constructive criminal contempt in the circuit court are entitled to trial by jury.

*Thompson* did not involve criminal contempt. Instead, that case was concerned with application of a statute regarding district court jurisdiction, § 4–302 of the Courts & Judicial Proceedings Article, Maryland Code (1974, 1975 Cum.Supp.). The defendant in *Thompson* was charged with three violations of the motor vehicle laws, one of which was punishable by a fine and imprisonment of up to one year, one of which was punishable by a fine and imprisonment of up to two months, and one of which was punishable by a fine only. *Id.* at 44, 359 A.2d 203. Pursuant to § 4–302, which provides that a defendant may demand a jury trial and have his case removed to

the circuit court if he is charged with a crime punishable by imprisonment of more than 90 days, the defendant demanded a jury trial and his case was removed to the circuit court. While the case was pending in the circuit court, the prosecutor *nolle prossed* the most serious charge and then argued that the defendant was not entitled to a jury trial on the remaining charges. *Id.* at 45, 359 A.2d 203. The circuit court agreed and tried the defendant without a jury. *Id.* The Court of Appeals reversed.

The Court of Appeals noted that § 4–302 is not a limitation upon the right to jury trial in circuit court but, instead, is a statute dealing with the "circumstances whereby jurisdiction attaches in the circuit courts over offenses 'otherwise within the District Court's jurisdiction.'" *Id.* at 47–48, 359 A.2d 203 (quoting CJ § 4–302). Tracing back to early English law, the Court went on to note that, at common law, all crimes, serious or petty, were tried by jury in courts of general jurisdiction. The Court noted that this right was restricted only when authority to try minor crimes was conferred upon justices of the peace, predecessors to the district court. More specifically, the Court stated that

> [u]nless an offense was specifically entrusted by statute to the summary jurisdiction of the justices it could not be tried in summary fashion, since the common law was a "stranger" to such proceedings.

*Id.* at 51, 359 A.2d 203 (citing 4 Blackstone, *Commentaries,* p. 356 (W. Hammond ed. 1890)). The Court stated that, while it may be constitutional to restrict the right to jury trial in those cases involving petty offenses, there is no indication that the legislature intended to restrict such right in those cases tried in the circuit courts, the highest common law courts of record in the State, exercising full common law powers and jurisdiction in criminal cases. *Id.* at 52–53, 359 A.2d 203. Consequently, a defendant charged with a crime in the circuit court is entitled to the common law mode of trial, trial by jury.

Appellant's reliance upon *Thompson* is misplaced. As noted above, the *Thompson* decision was not based upon any pecu-

liarity of Maryland law, but instead, was based upon the common law, as it developed in England, and subsequently, in this country. At common law, contempt proceedings, whether criminal or civil, constructive or direct, historically have not been tried by jury. *Bloom v. Illinois*, 391 U.S. 194, 196, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968); *Green v. United States*, 356 U.S. 165, 183–85, 78 S.Ct. 632, 2 L.Ed.2d 672 (1958); *In Re Debs*, 158 U.S. 564, 594–96, 15 S.Ct. 900, 39 L.Ed. 1092 (1895); *Interstate Commerce Commission v. Brimson*, 154 U.S. 447, 489, 14 S.Ct. 1125, 38 L.Ed. 1047 (1894); *Eilenbecker v. District Court of Plymouth County*, 134 U.S. 31, 36–37, 10 S.Ct. 424, 33 L.Ed. 801 (1890); *Sheets v. City of Hagerstown*, 204 Md. 113, 118–19, 102 A.2d 734 (1954); *Hitzelberger v. State*, 173 Md. 435, 438–40, 196 A. 288 (1938); *Kelly v. Montebello Park Co.*, 141 Md. 194, 205, 118 A. 600 (1922); *Ex Parte Maulsby*, 13 Md. 625, 635 (1859).

Although the foregoing cases do not expressly distinguish between the various forms of contempt, they clearly include constructive criminal contempt in their discussion of those matters that a court need not refer to a jury. As stated by the United States Supreme Court,

> *the power of a court to make an order carries with it the equal power to punish for disobedience of that order,* and the inquiry as to the question of disobedience has been, from time immemorial, the special function of the court. And this is no technical rule. In order that a court may compel obedience to its orders, it must have the right to inquire whether there has been any disobedience thereof. *To submit the question of disobedience to another tribunal, be it a jury or another court, would operate to deprive the proceeding of half its efficiency.* ... In *Watson v. Williams*, 36 Miss. 331, 341, it was said: "The power to fine and imprison for contempt, from the earliest history of jurisprudence, has been regarded as a necessary incident and attribute of a court, without which it could not more exist than without a judge. It is a power inherent in all courts of record, and coexisting with them by the wise provisions of the common law. A court without the power

effectually to protect itself against the assaults of the lawless, or to enforce its orders, judgments or decrees against the recusant parties before it, would be a disgrace to the legislation, and a stigma upon the ages which invented it."

*In Re Debs, supra,* 158 U.S. at 594–96, 15 S.Ct. 900 (emphasis added). *See also Bloom,* 391 U.S. at 196, 88 S.Ct. 1477 (in case involving constructive criminal contempt, noting lack of common law right to jury trial in contempt cases); *Gompers v. United States,* 233 U.S. 604, 610–12, 34 S.Ct. 693, 58 L.Ed. 1115 (1914) (criticizing such treatment of constructive criminal contempts).

Although appellant is correct that the common law mode of trial for crimes has been trial by jury, contempt has not been treated as other crimes. *See Green,* 356 U.S. at 183–85, 78 S.Ct. 632. Even though contempt is potentially punishable by imprisonment, the common law mode of trial for contempt, whether criminal or civil, has been trial by the court whose order has been violated. *Id.* The common law rule for the punishment of contempt is actually the converse of the common law rule for the trial of crimes identified in *Thompson.* Under the line of cases discussed in *Thompson,* there is a right to jury trial unless abridged by the Legislature. Under the cases involving contempt, constitutional considerations aside, there is no right to jury trial unless expressly granted by the Legislature.

A review of early Maryland authorities demonstrates that Maryland has followed the general common law rule regarding the punishment of contempts. Significantly, chapter 450, § 1 of the 1853 Laws of Maryland expressly provided for the summary punishment [1] of contempts such as the one at issue in this case:

---

1. We acknowledge that the use of the word "summary" may cause some confusion because it means different things when used in different contexts. Black's Law Dictionary (6th Ed.) defines "summary" as follows:

   **Summary,** *adj.* Short; concise; immediate; peremptory; off-hand; without a jury; provisional; statutory. The term as used in connec-

That the power of the several courts of Maryland to issue attachments and inflict summary punishments for contempts of court shall not be construed to extend to any cases except the misbehavior of any person or persons in the presence of the said courts, or so near thereto as to obstruct the administration of justice, the misbehavior of any of the officers of the said courts in their official transaction, and the *disobedience* or resistance *by any* officer of the said courts, *party,* juror, witness, or any other person or persons, *to any lawful writ, process, order, rule, decree or command of the said courts.*

(Emphasis supplied.) This statute did not empower the courts to punish contempts summarily. Rather, it was merely declaratory of the power, to punish contempts summarily, inherent in the courts under common law. *Sheets,* 204 Md. at 118–19, 102 A.2d 734; *Hitzelberger,* 173 Md. at 438–40, 196 A. 288; *Kelly,* 141 Md. at 205, 118 A. 600; *Ex Parte Maulsby,* 13 Md. at 635. Thereafter, pursuant to the Acts of 1927, ch. 357, summary proceedings were confined to "direct contempt, alleged to have been committed in the presence of the Court, or so near to the Court as to interrupt its proceedings." The same Act prescribed a separate procedure in cases of constructive contempts. Significantly, the procedure prescribed for constructive contempts provided the contemnor with an opportunity to show cause why he should not be held in contempt, and provided that such matters be tried before the court without a jury. The current statute governing con-

---

tion with legal proceedings means a short, concise, and immediate proceeding.

* * *

*Summary jurisdiction.* The jurisdiction of a court to give a judgment or make an order forthwith; e.g., to commit to prison for contempt. In the case of justices of the peace, a jurisdiction to convict an offender themselves instead of committing him for trial by a jury.

*Thompson* uses the term "summary" to refer to cases conferred to the jurisdiction of the justices of the peace for disposition without a jury while the cases, statutes, and rules regarding contempt proceedings use the term to refer to an even more restrictive and immediate proceeding now confined to the disposition of direct contempt charges.

tempt, CJ § 1–202(a), provides that the courts of the State (district, circuit, and appellate courts) "may exercise the power to punish for contempt of court or to compel compliance with [their] commands in the manner prescribed by the Maryland Rules...." A review of those rules reveals that the procedure for trying constructive criminal contempts remained basically unchanged until the adoption of Rule 15–205, effective January 1, 1997. *See* former Rule P4. The current rule now applies the jury trial provisions of Rule 4–246 to all constructive criminal contempt proceedings. *See* Rule 15–205(f).

▪ Rule 15–205(f) does not provide appellant with a right to jury trial. Assuming that this Rule applies to appellant's case,[2] we do not believe that it confers a right to jury trial that does not otherwise exist by operation of other law. Rule 15–205(f) merely applies the procedures of Rule 4–246 to constructive criminal contempt proceedings. Rule 4–246 provides in pertinent part that "[i]n the circuit court a defendant *having a right to trial by jury* shall be tried by a jury unless the right is waived pursuant to section (b) of this Rule...." (Emphasis added.) By its own clear language, the Rule applies only when, by operation of law, the defendant has a right to jury trial. Thus, we read Rule 15–205(f) to provide merely that any right to jury trial possessed by a criminal contemnor may be waived only in accordance with the provisions of Rule 4–246.[3]

▪ Appellant next argues that he had a right to jury trial under the Maryland Declaration of Rights. Citing *Kawamura v. State*, 299 Md. 276, 473 A.2d 438 (1984), appellant notes that State Constitutional law provides the right of jury trial to

---

**2.** Rule 15–205 was effective January 1, 1997, after the criminal contempt petition had been filed, and after the proceedings before the master, but before the hearing before the trial judge.

**3.** As a practical matter, in order for this mechanism to work properly, the trial court will be required to inform the defendant at the outset whether it will consider the imposition of a sentence in excess of six months.

anyone charged with a serious offense as opposed to a petty offense. Appellant states that, under *Kawamura*, a serious offense for purposes of determining the right to a jury trial is an offense that either historically has been viewed as a serious crime, or that is subject to an infamous punishment. Appellant contends that criminal contempt historically has been viewed as a serious crime, and there is no reason to distinguish it from other serious crimes. Alternatively, appellant contends that a prison sentence in excess of 90 days is an infamous punishment. Appellant's initial contention fails for the same reason that his reliance upon *Thompson* fails. Specifically, criminal contempt historically has not been viewed as a serious crime implicating the constitutional right to trial by jury.

In *Green, supra*, the Supreme Court dealt with application of a federal statute giving the federal district courts the power to punish by fine or imprisonment, at their discretion, certain enumerated classes of contempts. The petitioners had been cited and tried for constructive criminal contempt and each given prison sentences of five years. 356 U.S. at 167, 78 S.Ct. 632. The petitioners argued that proceedings for criminal contempt, if punishable by terms exceeding one year, must be based upon grand jury indictments under the clause of the Fifth Amendment providing such indictments for infamous crimes. *Id.* at 183, 78 S.Ct. 632. They argued that an infamous crime is one punishable by imprisonment in a penitentiary, and imprisonment in a penitentiary can be imposed only if the crime is subject to imprisonment exceeding one year. *Id.* They urged that criminal contempts that are subject to such punishment are infamous crimes. *Id.* The Supreme Court rejected this argument, noting that the historical distinction between serious and petty offenses had not been applied to contempts. *Id.*

█ The Supreme Court signaled for the first time, in *dicta*, that such a distinction may in fact apply to criminal contempts as a matter of federal constitutional right in *United States v. Barnett*, 376 U.S. 681, 694–95, 84 S.Ct. 984, 12 L.Ed.2d 23, *reh. denied*, 377 U.S. 973, 84 S.Ct. 1642, 12

L.Ed.2d 742 (1964).  Thereafter, in *Cheff v. Schnackenberg*, 384 U.S. 373, 86 S.Ct. 1523, 16 L.Ed.2d 629 (1966), the Supreme Court held that a six month term of punishment permitted the federal trial court to treat the prosecution of a criminal contempt as a prosecution for a petty offense, and accordingly, the contemnor was not entitled to a jury trial. The Court went on to declare, however, that "sentences exceeding six months for criminal contempt may not be imposed by federal courts absent a jury trial or waiver thereof." 384 U.S. at 380, 86 S.Ct. 1523.  It was not until *Bloom v. Illinois, supra,* that the Supreme Court, for the first time, reversed convictions for criminal contempt wherein sentences of two years had been imposed.  The Court held that the original rationale for trying contempt without a jury, preservation of the power and integrity of the courts, could no longer justify a denial of a constitutional right to jury trial in those cases wherein serious punishment was imposed for the contempt.  391 U.S. at 208, 88 S.Ct. 1477.  Under federal constitutional law, serious criminal contempt warranting the right to a jury trial is contempt that is punishable by imprisonment of greater than six months.[4]  *Taylor,* 418 U.S. at 488, 94 S.Ct. 2697; *Codispoti,* 418 U.S. at 512, 94 S.Ct. 2687; *Baldwin v. New York,* 399 U.S. 66, 69, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970); *Wilkins,* 293 Md. at 338–39, 444 A.2d 445.  Nevertheless, if, as appellant asserts, a sentence of six months is an infamous punishment under Maryland law, appellant still was entitled to a jury trial under the Maryland Declaration of Rights as construed in *Kawamura.*

*Kawamura,* 299 Md. at 276, 473 A.2d 438, was before the Court of Appeals on *certiorari* from the district court denial of a trial by jury and involved a constitutional attack on C.J. § 4–

---

4. Federal law does not distinguish between direct and constructive contempts for purposes of determining a right to jury trial.  Even if a contempt is committed in the presence of the court, the court may not punish the contemnor with a sentence in excess of six months without affording him a jury trial.  *Codispoti,* 418 U.S. at 514, 94 S.Ct. 2687; *Bloom,* 391 U.S. at 209–10, 88 S.Ct. 1477.  A direct contempt may be punished summarily as long as the sentence does not exceed six months.  *Id.*

302(d)(2)(ii). Section 4–302(d)(2)(i) provides that a defendant charged in the district court with a crime punishable by imprisonment in excess of 90 days may pray a jury trial, thereby depriving the district court of jurisdiction. Subsection 4–302(d)(2)(ii) provides in pertinent part that the district court judge may deny the defendant a jury trial if the judge and prosecutor agree that, regardless of the statutory or common law penalties, the judge will not impose a prison sentence of greater than 90 days. The Court of Appeals held that the statute was unconstitutional under the Maryland Declaration of Rights as applied to a defendant charged with theft under Art. 27, § 342(f)(2) (petty larceny prior to 1978). In so holding, the Court found the case to be indistinguishable from *Danner v. State*, 89 Md. 220, 42 A. 965 (1899), a case it declined to overrule.

In *Danner*, the defendant was convicted of petty larceny, the statutory precursor to theft, and an offense punishable by a maximum of eighteen months in the penitentiary or the county jail. Under the authority of a statute conferring upon justices of the peace jurisdiction to try such cases, the defendant was tried without a jury by a justice of the peace and sentenced to thirty days in the county jail. The Court held that the defendant was entitled to a jury trial at the initial trial level, and that right was not satisfied by providing a jury trial upon appeal to a court of general jurisdiction. The Court held that the state constitutional right to a jury trial attaches to any offense for which an infamous punishment could be imposed, and that confinement in the penitentiary was an infamous punishment. The facts and holding of *Danner* led the *Kawamura* Court to conclude that, to the extent the length of incarceration or the place of incarceration is relevant to determining whether the state constitutional right to a jury trial is applicable at the initial trial level, the maximum sentence and place established by the Legislature, rather than the sentence or place decided by the court in a particular case, controls.[5] The Court noted that the maximum statutory pen-

---

5. The Court recognized an exception for criminal contempt proceedings, at least by implication. The Court recognized that, under federal

alty for theft was eighteen months imprisonment, and that one convicted of theft could be confined in the penitentiary. Further, although the Legislature had classified the offense as a misdemeanor, the Court noted that theft has always been considered an extremely serious crime in Maryland. Thus, one charged with such a crime has a right to jury trial that cannot be abridged under C.J. § 4–302(d)(2)(ii).

Nowhere within *Kawamura* do we find support for the proposition that 180 days confinement in a detention center, as opposed to a penitentiary, is an infamous punishment under Maryland law. As noted, *Kawamura* concerned a maximum penalty of eighteen months, not 180 days. Further, the place of incarceration, the penitentiary, and the nature of the crime were factors in determining the punishment to be infamous.[6]

Neither do we find any other Maryland support for the proposition that appellant was entitled to a jury trial in this case. In *Sheets, supra,* the Court of Appeals held that a defendant in a criminal contempt proceeding is not entitled to an indictment by a Grand Jury or a trial by jury under either the Maryland Constitution or the United States Constitution. 204 Md. at 117, 102 A.2d 734. After publication of the *Bloom* line of cases, the Court of Appeals and this Court, on various

---

constitutional law, the right to a jury trial for a charge of criminal contempt is determined by the actual sentence. *See* 299 Md. at 292 n. 18, 473 A.2d 438.

**6.** We note, however, that the distinction between confinement in a penitentiary and confinement in a local detention center may be less important currently than in earlier years. *Danner* was decided almost exclusively upon the fact that the crime was punishable by incarceration in the penitentiary, and has been distinguished solely on that basis. *See, e.g., Dougherty v. Superintendent of the Maryland House of Correction,* 144 Md. 204, 124 A. 870 (1923) (no right to jury trial at the initial tier when defendant was charged with violating a section of the motor vehicle laws making it a misdemeanor, punishable by a maximum of five years imprisonment, for one to operate or occupy a motor vehicle if he knew or had reason to know it was stolen; Court noted that the offense was not "a so-called penitentiary misdemeanor," and thus, was distinguishable from *Danner* ). By contrast, in *Kawamura,* the Court relied additionally upon the length of confinement and the nature of the crime.

occasions, have held that six months imprisonment is the maximum sentence that may be imposed for criminal contempt without affording the contemnor a jury trial. *Mitchell v. State,* 320 Md. 756, 580 A.2d 196 (1990) (direct criminal contempt); *Whitaker,* 307 Md. at 368, 514 A.2d 4 (constructive contempt, treated as either civil or criminal); *Wilkins,* 293 Md. at 335, 444 A.2d 445 (direct criminal contempt); *In Re Martin,* 10 Md.App. 385, 270 A.2d 674 (1970), *cert. denied,* 403 U.S. 955, 91 S.Ct. 2292, 29 L.Ed.2d 865 (1971) (constructive criminal contempt). *See also State v. Roll and Scholl,* 267 Md. 714, 730–31, 298 A.2d 867 (1973) (suggesting in *dicta* that a contemnor in a criminal contempt proceeding in Maryland may not have a right to jury trial, except as expressed in *Bloom* ); *Robinson v. State,* 19 Md.App. 20, 29 n. 3, 308 A.2d 712 (1973) (*dicta* ). Although such cases relied exclusively upon federal authorities, they never suggested, even in *dicta,* that a different result may occur under the Maryland Constitution. Indeed, in *In Re Martin,* we expressly held that the Maryland Constitution does not grant a right to jury trial to a defendant in a contempt proceeding sentenced to six months imprisonment and a $500 fine. We continue to adhere to that view.

Significantly, the language of Article 21 of the Maryland Declaration of Rights and that of the Sixth Amendment, guaranteeing a right to trial by an impartial jury in all criminal prosecutions, is virtually identical with one exception that has no relevance in this case.[7] Thus, the Supreme Court's pronouncements on the extent of that right are "practically direct authority." *Erbe v. State,* 276 Md. 541, 545, 350 A.2d 640 (1976).

We are not otherwise persuaded by appellant's citations to cases from other jurisdictions that have read their respective constitutions to confer upon criminal contemnors greater rights than those conferred by the United States Constitution.

---

7. Article 21 expressly provides the right to a unanimous jury verdict while the Sixth Amendment does not. *See Maloney v. State,* 17 Md.App. 609, 622, 304 A.2d 260 (1973).

Alaska and West Virginia have read their respective constitutions to provide the right to jury trial in all criminal prosecutions wherein any imprisonment may be imposed. *State v. Browder,* 486 P.2d 925, 937 (Alaska 1971); *Hendershot v. Hendershot,* 164 W.Va. 190, 263 S.E.2d 90, 95 (1980). Washington has read its constitution to provide the right to jury trial in all criminal prosecutions, whether imprisonment is imposed or not. *State ex rel. Herron v. Browet, Inc.,* 103 Wash.2d 215, 691 P.2d 571, 573–74 (1984). Our Court of Appeals clearly has not read our Constitution to provide so broad a right. *See Kawamura,* 299 Md. 276, 473 A.2d 438; *Danner,* 89 Md. 220, 42 A. 965; *State v. Glenn,* 54 Md. 572 (1880).

Appellant next points out that a defendant charged in district court has the right to a trial by jury if the penalty for the offense with which the defendant is charged permits imprisonment for a period in excess of 90 days. CJ § 4–302. Appellant concludes that CJ § 4–302 applies to criminal contempts tried in the district court. Thus, according to appellant, a holding that 180 days, rather than 90 days, is the dividing line between serious and petty offenses in the circuit court would have the effect of granting a defendant greater rights in district court than in circuit court. Appellant further notes that, under CJ § 12–401(g), a defendant convicted of contempt in district court is entitled to a trial *de novo* by jury in circuit court if the offense is subject to any penalty of imprisonment.

▇ We agree with appellant that a defendant convicted of criminal contempt, either constructive or direct, in the district court has greater rights than one convicted of criminal contempt in the circuit court. In *Harper v. State,* 312 Md. 396, 540 A.2d 124 (1988), the Court of Appeals held that former CJ § 12–401(e), the predecessor to CJ § 12–401(g), applied to an appeal from the district court to a circuit court in a direct criminal contempt case. The holding in *Harper* affords a *de novo* jury trial in the circuit court to one convicted of criminal contempt in the district court if sentenced to any imprison-

ment. The *Harper* holding essentially eviscerates any inherent power of the district courts to punish contempt committed in the district courts. There is, however, absolutely no law to support the proposition that the Legislature intended to limit the circuit courts' power to punish contempts in the same manner.[8]

## 2.

■ Appellant argues that the prior civil contempt judgments should not have been admitted into evidence because of the lesser burden of proof in the civil action, as opposed to the

---

**8.** We note that the *Harper* Court could have held that the provisions of § 12–401 are not applicable to appeals from criminal contempt convictions in the district courts. CJ § 1–202(a) governs the exercise of power to punish contempt in all the courts of the State, including the district courts, and provides that such power is to be exercised in accordance with the Maryland Rules. The Maryland Rules, at that time and currently, have provided one set of rules governing contempt, rather than a separate set of rules governing contempt in the district courts. CJ § 12–402, at that time, and currently, has provided a right of appeal from any district court order, including one interlocutory in nature, adjudging a person in contempt. CJ § 12–402 contains no reference to the provisions of CJ § 12–401. The provisions of CJ § 12–401 could have been construed to govern only appeals granted in § 12–401, that is, appeals from final judgments in civil or criminal cases. A contrary result in *Harper* would have been consistent with the general rule under common law that contempts are to be tried and punished by the tribunal in which they are committed.

Relying upon *Stanton v. State*, 290 Md. 245, 428 A.2d 1224 (1981), and *Hardy v. State*, 279 Md. 489, 369 A.2d 1043 (1977), the *Harper* Court noted that "[e]xcept as restricted by constitutionally permissible statutes or rules, a defendant is entitled to a jury trial in a *de novo* appeal in a criminal case." 312 Md. at 396, 540 A.2d 124. Those cases held that the term *"de novo"* means to start afresh or anew. They reasoned that a *de novo* appeal entitles a defendant to the same process that would have been afforded had the case originated in the circuit court. Relying upon *Thompson, supra,* they held that all criminal cases originating in the circuit court must be tried by jury unless a jury trial is waived by the defendant. An application of the foregoing rationale to cases involving criminal contempt might lead one to conclude that a criminal contemnor is not entitled to a *de novo* jury trial in the circuit court unless sentenced to prison for a term greater than six months. Despite appellant's observation that a defendant has greater rights in the district courts than in the circuit courts, the result in *Harper* is not

criminal action, and because the criminal action requires a showing and finding of wilfulness.

The State argues that this issue was not preserved because the only objection below was one of relevance. We admit to some uncertainty as to the precise nature of appellant's objection. Appellant appeared to acknowledge the relevance of the February 12, 1996 order, but it may be that he intended to acknowledge the relevance of the June 27, 1995 order. Appellant also referred to the prior orders as being contempt orders, but one of the orders was not a contempt order; rather it was an order reducing an arrearage to judgment.

In any event, if we assume the objection has been preserved, we agree with the State. The prior orders were admissible for the purpose of establishing appellant's knowledge of the support order and the amounts due under it.

### 3.

Appellant argues that the evidence was legally insufficient to sustain a finding of willfulness or intent, an essential ingredient to the crime. *See Scott v. State*, 110 Md.App. 464, 490, 677 A.2d 1078 (1996). To the contrary, according to appellant, the evidence demonstrated a lack of ability to comply with the support order. Appellant points out that the payments that he made coincided with the periods of time during which he was employed.

The trial court found as follows:

The Court has considered the evidence that has been presented in this matter on the citation for criminal contempt. During the period in question, from June of '95 through September of '96 there was one payment in the amount of six hundred and fifty-two dollars and eighty-six cents that was made, and that was directly in between the two Orders for contempt in this case. The period in issue is a period from June of '95 to September of '96 which is one,

inconsistent with the result in this case, resting as it does upon a statutory limitation upon the district court's power to punish contempt.

two—sixteen month period. All right. And during that—during that period, as indicated, the only payment made was the payment in question. During that—the payment previously cited.

During that period of time the Defendant worked for Shimatsu as a technician. He also had a—what he described as a full-time job at a deli as well as another job as—in a landscaping service where he employed other individuals and also briefly worked at Golden Corral and there was also some testimony regarding a—an over-the-road—or a trucking job, the tractor-trailer and loading trucks. The Defendant is thirty years of age, a young man. He has two years of college plus service in the Marine Corps Reserve. He appears to the Court to be an intelligent and well-educated individual who is well-spoken and would be the type of individual who would impress employers.

The Court has considered the issue of whether or not the—this Defendant is—is cognizant of the Order in question. The Court believes he—he is and there's no denial of that, that he is aware of the amounts that were due. He's aware of the mechanisms by which to make payments and that the Defendant has in fact made only the payment in question and that also is—I think is important to note is at the moment of activity in terms of civil contempt at that time.

The Court has considered the Defendant's suggestions that his financial situation at that time prevented him from making the payments. The Court finds that to be not credible and that there clearly were funds available to him, if not for full payment at least for partial payment, and even the Defendant's suggestion that—that somehow he believed that only a full payment could be made is belied by the fact that he did make a payment less than the full amount in April of '96, and has made no full payments ever in the course of his payments.

The Court is quite satisfied that this Defendant had the opportunity to obtain whatever employment would have provided him with the ability to make these payments and

chose not to do so and that at least a partial motivation for his actions was to avoid his child support obligations, and has had money to pay attorneys. He's used money to obtain a truck. Has used money to support his condominium at various points in time before it was taken in refinancing—in foreclosure. Has utilized his money for many other things, but has never utilized his money for the support of his minor child.

The Court finds his actions to be knowingly, willful, intentional and finds the Defendant's testimony as far as excuses not to be credible before this Court.

The trial court clearly found that appellant was not a credible witness. The trial court could permissibly find intent from the totality of the circumstances, including appellant's words and conduct. *See Carter v. State,* 10 Md.App. 50, 53–56, 267 A.2d 743 (1970) (holding that while, generally, disbelieving evidence provides no basis for finding evidence to the contrary, there is an exception involving *scienter* or guilty knowledge, *i.e.,* reasons for disbelieving a denial of *scienter* may provide a basis for finding *scienter* ). More specifically, the trial judge found that appellant was aware of his obligations under the support order, and, at various times, had an ability to pay more towards his obligations than he actually paid. These findings, coupled with the court's disbelief of the various excuses provided by appellant for nonpayment, were sufficient to support a finding of intent. We cannot say that the court's finding in this regard was clearly erroneous. *See Trovato v. State,* 36 Md.App. 183, 188, 373 A.2d 78 (1977); *Robinson v. State,* 17 Md.App. 451, 459, 302 A.2d 659 (1973); *Folk v. State,* 11 Md.App. 508, 520, 275 A.2d 184 (1971).

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**