REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1154

September Term, 2013

_____

DAVID ISRAEL BORD

v.

BALTIMORE COUNTY, MARYLAND, ET
AL.

_____

Meredith,
Zarnoch,
Reed,

JJ.

_____

Opinion by Reed, J.

_____

Filed: December 17, 2014

This appeal involves litigation arising from the execution of a search and seizure warrant of David Bord's ("Appellant") home in which Corporal Anthony Kidwell ("Cpl. Kidwell") and Detective Socha ("Det. Socha") of the Baltimore County Police Department recovered twenty-eight firearms and a 30mm cannon. Appellant alleges that the officers mishandled the firearms, causing damages to his firearms. The primary issue before us is whether appellant is entitled to statutory damages under Criminal Procedure Article ("C.P.") § 1-203 of the Maryland Code.

Appellant filed suit against both officers and the County Police in the Circuit Court for Baltimore County. The circuit court granted the two officers' motions to dismiss, finding that the police officers were immune from civil liability in the absence of malice. The circuit court also held appellant's claims were common law tort claims, and thus, granted Baltimore County's motion for judgment on the basis of government immunity.

Appellant filed this timely appeal, and presented five questions for our review, which we rephrased into four questions[1]:

---

[1]

 Appellant presented the following questions:

1. Whether the trial court erred in holding that Baltimore County is immune from an action under Criminal Procedure Article § 1-203(d), as an interpretation that the Local Government Tort Claims Act provided immunity would render § 1-203(d) meaningless?

2. Whether the trial court erred in failing to enforce the circuit court's earlier injunction against the county, whether the court intended to so hold on the basis of the county's supposed governmental immunity; or upon the court's failure to recognize that the injunction would have served as a basis for relief in appellant's favor?

3. Whether the trial court erred in dismissing the two individual police officers on the basis of immunity, as there were sufficient allegations of, and evidence of malice?

1.  Does C.P. § 1-203(d) provide a civil cause of action for money damages where property is damaged during the execution of a search and seizure warrant?

2.  Did the circuit court err in granting the individual officers' motion to dismiss and Baltimore County's motion for judgment on the basis of governmental immunity?

3.  Did the circuit court abuse its discretion in refusing to allow appellant to amend the pleadings?

4.  Did the circuit court abuse its discretion in refusing to impose sanctions against appellee Baltimore County under the discovery rules?

For the following reasons, we answer all questions in the negative, and affirm the judgment of the circuit court.

## FACTS AND PROCEDURAL BACKGROUND

The facts are from the parties' respective factual submissions and trial testimony:

Appellant is a licensed gun collector, and has an extensive collection of firearms that were fully registered and documented. All weapons were securely stored in safes within his basement of his residence, and a 30mm cannon was stored within his automobile repair shop. Appellant testified that most of the firearms were at least "50 years old, [in] excellent condition, superbly maintained and . . . the cream of the crop."

In 2009, agents from the ATF Baltimore and Phoenix Field Offices approached Det. Socha, a Baltimore County Police Detective, concerning an investigation of illegal

---

4.  Whether the trial court abused its discretion in refusing to allow appellant to amend the pleadings, where significant testimony of a county witness/party at trial undermined the various defenses which had been raised?

5.  Whether the trial court abused its discretion in refusing to impose sanctions under the discovery rules, in view of the county's failure to provide photographs, and in view of misstatements within interrogatory answers?

2

machine guns being transported into Maryland. The ATF agents informed Det. Socha that they interviewed appellant in 2008 and seized an illegally manufactured machine gun from appellant at that time. The ATF agents also told Det. Socha that there was "possibly another machine gun that was in his possession." Based upon this information, Det. Socha applied for a search warrant for appellant's home at 9 Springbriar Lane and his business at 6303 Blair Hill Lane, in Baltimore County. The search warrant was based on a violation of the Maryland Code, Criminal Law Article ("C.L.") § 4-405(a)(1)(iii).[2]

On December 8, 2009, while appellant was staying with friends in California after attending a gun show in Arizona, appellant received a phone call from Cpl. Kidwell. The corporal explained that a police team was present at appellant's residence with a warrant, and that they intended to open the door and drill open appellant's gun safes. Appellant called his adult children, who proceeded over to the residence, and opened the door and gun safes for the officers. The police officers executed the search and seizure warrant, as the ATF seized certain weapons they determined would require further investigation.

Det. Socha testified that the weapons were placed on top of a wool blanket in a Baltimore County vehicle, and appellant's children requested that towels be used to cover them for protection. Upon the request of appellant's children, Det. Socha testified that the

<hr />

[2]

   C.L. § 4-405(a)(1)(iii) states: "Possession or use of a machine gun is presumed to be for an offensive or aggressive purpose when . . . the machine gun . . . is not registered as required under § 4-403 of this subtitle."

Det. Socha testified that the search warrant was premised on appellant's failure to register a machine gun as required by C.L. § 4-403. That section states in relevant part: "A person who acquires a machine gun shall register the machine gun with the Secretary of State Police: (i) within 24 hours after acquiring the machine gun; and (ii) in each succeeding year during the month of May." *Id.* § 4-403(c)(1).

firearms were "laid flat down in the bed of the . . . evidence truck" and towels were used "as . . . [they] laid more guns down for protection" Det. Socha testified that nothing was laid on top of the 30mm cannon when it was seized from appellant's auto repair shop.

Appellant's neighbor testified that the firearms were loaded into a mobile lab "one on top of the other" in "no particular order, [with] no particular care taken," and it appeared as if the police officers were building a "bonfire." Appellant later testified that, during the execution of the warrant, the police had "broken open" all of his firearms and removed the slides, and "all the mags were thrown on the floor, and every gun was taken out of its box and disassembled to make sure that it wasn't loaded." A total of twenty-eight weapons were seized from appellant's residence and a 30mm cannon was seized from appellant's place of business.

On about December 12 or 13, 2009, appellant met with the Baltimore County Police and an ATF agent, and allowed the officers to examine his paperwork for the firearms, but the police refused to return the firearms at that time. Appellant alleged in his complaint that, when he presented his paperwork during this meeting, Det. Socha and Cpl. Kidwell responded he should "save it for court," that his paperwork was "'wrong' or 'bull__t'" and that they did not believe in its accuracy. At a March 15, 2011, motions hearing, appellant testified that the officers were "ill-mannered" and "ill-tempered" during that meeting and, when he asked for the return of his firearms, they told him "that's not going to happen[] today," and also stated words to the effect that "plaintiff would never get his property back."

On August 27, 2010, after several unsuccessful attempts to recover his firearms, appellant filed his complaint, which consisted of three counts: (1) demand for return of property, (2) detinue, and for (3) trover and conversion against Baltimore County, Det. Socha, and Cpl. Kidwell. Appellant subsequently requested a temporary restraining order, which was granted on August 31, 2010, followed by a request for preliminary injunction enjoining appellee from selling, destroying or damaging the property seized from appellant, which was granted on September 16, 2010.

In November of 2010, the State charged appellant for possession of a banned assault pistol, which was placed on the stet docket. Appellant was not charged under any federal criminal statutes. The appellees moved to dismiss the complaint, and after the March 25, 2011, hearing, the circuit court granted the motion to dismiss as to the two officers because the civil liability of police officers in the ordinary course of employment requires allegations of actual malice, which appellant did not sufficiently allege. The circuit court, however, denied appellee Baltimore County's motion to dismiss. In that same order, the circuit court granted appellant leave to amend the complaint. Subsequently, appellant filed a motion for summary judgment, which was denied. On August 10, 2010, appellee Baltimore County released eighteen of the twenty-eight firearms to the ATF. The remainder of the firearms were released to the ATF on March 31, 2011, and May 5, 2011. At this point, appellee possessed only the 30mm cannon. As of the March 19, 2013, hearing, appellee returned the 30mm cannon to appellant. By the date of trial, appellee was no longer in possession of any of appellant's firearms.

The circuit court conducted a trial on the merits on March 19, 20, and 21, 2013. At trial on March 20, 2013, appellant rested his case, and the County made a motion for directed verdict primarily based on governmental immunity. The circuit court reserved its ruling on appellee's motion for directed verdict to allow the parties to brief the issue on governmental immunity. During trial on March 21, 2013, Det. Socha testified that entry and exit photos were taken during the execution of the search warrant. Counsel for appellant stated that he had previously made numerous requests for those photos to no avail. In light of this development, the circuit court continued the trial by agreement to allow appellant to obtain copies of the photos, and also to brief the issue on governmental immunity.

On April 12, 2013, appellant filed a motion to reconsider order of dismissal against the officers, and a motion for leave to amend pleadings. At the hearing on April 29, 2013, the court denied both motions on the basis that appellant had previously received leave to amend and failed to amend the complaint against the officers during the two years that had passed. The circuit court also held that it would be unfair to allow appellant to amend after appellant had already rested his case.

At the conclusion of trial, the circuit court granted appellee Baltimore County's motion for judgment. Relying on *DiPino v. Davis*, 354 Md. 18 (1999), the circuit court found that appellant's causes of actions were common law torts. As a result, appellee Baltimore County was not liable for common law torts committed while acting in a governmental capacity. The circuit court held that "executing a search and seizure warrant and confiscating property during that search and seizure warrant is a

6

governmental function," and therefore, governmental immunity protected appellee from liability.

Appellant moved for a new trial on June 28, 2013, and the circuit court denied that motion on July 30, 2013. The circuit court explained that, although appellee failed to provide the photos taken during the search and seizure, a new trial was not warranted because appellant failed to explain "how [ ] [appellee]'s failure to provide the photographs during discovery prejudiced [appellant] or is relevant to [ ] [appellee]'s defense of immunity, or establishes that 'no reasonable officer could have believed that the conduct complained of was lawful.'"

## DISCUSSION

### I. STATUTORY INTERPRETATION

#### A. Contentions

Appellant contends that the circuit court erred in holding that appellant's causes of action are common law torts, and that appellee Baltimore County is entitled to government immunity from such actions. Appellant argues that a violation of the C.P. § 1-203(d) provides a private cause of action for statutory damages. Appellant argues that the circuit court's holding has the effect of immunizing all county or local police agencies from having to return property, rendering C.P. § 1-203(d)(1) useless.

In addition, although all the weapons have been returned to appellant, appellant now converts his action to one for compensation for damages caused to his property. He contends that this Court should remand to the lower court, so that it can interpret the meaning of "restore" in C.P. § 1-203(d)(1). Appellant argues that the General Assembly's

**7**

use of the word "restore" as opposed to "return" in the statute is significant, because it reveals the General Assembly's intention to provide for compensation for damages to property.

Appellee contends that appellant's Count 1 Claim titled "Demand for Return of Property" for a violation of C.P. § 1-203(d) was moot at the time of trial, because his property was returned before trial. In addition, that claim did not request damages. Appellee contends that although Counts II and III request damages, a civil cause of action for money damages cannot be based on C.P. § 1-203(d), and thus, appellant cannot be awarded damages under that statute. Appellee argues that the use of the word "restore" means return of property, which is consistent with the use of "restore" in other Maryland statutes. Specifically, the General Assembly did not include a right to pursue payment for property as it did in other statutes, which shows the statute's intent is solely to allow the court to order the return of property. Finally, appellee contends that assuming, arguendo, that the statute provided a right to pursue damages, appellant's claims are consistent with a tort action, to which government immunity would be applicable.

**B. Standard of Review & Law**

"Whether the [circuit] court applied the correct standard of proof in adjudging its grant of appellees' motion for judgment is a question of law that we review *de novo*." *Lowery v. Smithsburg Emergency Med. Serv.*, 173 Md. App. 662, 682-83 (2007) (internal citations omitted). "We review the grant of a motion for judgment under the same standard as we review grants of motions for judgment notwithstanding the verdict." *Tate v. Bd. of Educ. of Prince George's Cnty.*, 155 Md. App. 536, 544 (2004) (internal citation

8

omitted). The Court assumes the truth of all credible evidence on the issue and any inferences therefrom in the light most favorable to appellants, the non-moving parties. *Id.* (internal citation omitted). "Consequently, if there is any evidence, no matter how slight, that is legally sufficient to generate a jury question, the case must be submitted to the jury for its consideration." *Id.* at 545 (citing *Washington Metro. Area Transit Auth. v. Reading*, 109 Md. App. 89, 99 (1996)).

This case also presents a question of statutory interpretation, and therefore, we review the circuit court's disposition through summary judgment under a non-deferential standard of review. *Breslin v. Powell*, 421 Md. 266, 277 (2011) (internal citation omitted). Accordingly, "we must determine whether the [circuit] court's conclusions are legally correct under a *de novo* standard of review." *Jackson v. 2109 Brandywine, LLC*, 180 Md. App. 535, 567, *cert. denied*, 406 Md. 444 (2008) (internal quotation marks and citation omitted).

### C.Analysis

In Count I of appellant's complaint, appellant demanded the return of his firearms. The record reflects that all firearms in appellee's possession were returned to appellant. Appellant now contends that because the firearms were damaged while in appellee's possession, appellee is liable for the damages. Appellant unpersuasively argues that C.P. § 1-203(d)(1) provides a civil cause of action for money damages, because the statute's use of the term "restore" encompasses damages, and not merely the "return" of property. The appellant did not request the circuit court directly to interpret the term "restore," but after having reviewed the record, it appears that appellant raised the substance of this

argument before the circuit court. Thus, we will address this issue. We also affirm the circuit court's holding that appellant's claims constitute a tort action, and the officers are entitled to immunity absent malice.

It is well established that "[t]he cardinal rule of statutory interpretation is to ascertain and effectuate the real and actual intent of the Legislature." *Lockshin v. Semsker*, 412 Md. 257, 274 (2010). The Court of Appeals explained:

> To ascertain the intent of the General Assembly, we begin with the normal, plain meaning of the language of the statute. If the language of the statute is unambiguous and clearly consistent with the statute's apparent purpose, our inquiry as to legislative intent ends ordinarily and we apply the statute as written, without resort to other rules of construction. We neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute, and we do not construe a statute with "forced or subtle interpretations" that limit or extend its application.
>
> We, however, do not read statutory language in a vacuum, nor do we confine strictly our interpretation of a statute's plain language to the isolated section alone. Rather, the plain language must be viewed within the context of the statutory scheme to which it belongs, considering the purpose, aim, or policy of the Legislature in enacting the statute. We presume that the Legislature intends its enactments to operate together as a consistent and harmonious body of law, and, thus, we seek to reconcile and harmonize the parts of a statute, to the extent possible consistent with the statute's object and scope.
>
> Where the words of a statute are ambiguous and subject to more than one reasonable interpretation, or where the words are clear and unambiguous when viewed in isolation, but become ambiguous when read as part of a larger statutory scheme, a court must resolve the ambiguity by searching for legislative intent in other indicia, including the history of the legislation or other relevant sources intrinsic and extrinsic to the legislative process. In resolving ambiguities, a court considers the structure of the statute, how it relates to other

laws, its general purpose, and the relative rationality and legal effect of various competing constructions.

In every case, the statute must be given a reasonable interpretation, not one that is absurd, illogical, or incompatible with common sense.

*Id.* at 275-77 (internal quotation marks and citations omitted).

### *i. Plain Language*

Accordingly, we look first to the text of the statute. C.P. § 1-203(d) provides:

**Application or motion for restoration of property**

(d)(1) A circuit court judge or District Court judge shall cause property rightfully taken under a search warrant to *be restored to the person from whom it was taken if*, at any time, on *application* to the judge, the judge finds that the *property is being wrongfully withheld* after there is no further need for *retention of the property*.

(2) The judge may receive an *oral motion* made in open court at any time making application for the *return* of seized property if the *application for return* is based on the ground that the property, although rightfully taken under a search warrant, is being wrongfully withheld after there is no further need for *retention of the property*.

(3) If the judge grants the oral motion described in paragraph (2) of this subsection, the order of the court shall be in writing and a copy of the order shall be sent to the State's Attorney.

(4) Court costs may not be assessed against the person from whom the property was taken if:

      (i) the judge denies the oral motion and requires the person from whom the property was taken to proceed for return of the seized property by petition and an order to show cause to the police authority wrongfully withholding the property; and

      (ii) it is later ordered that the property be restored to the person from whom it was taken.

(Emphasis added.)

C.P. § 1-203(d) does not define the term "restore." Webster's New Collegiate Dictionary defines "restore" as: "1 : to give back: RETURN 2 : to put or bring back into existence or use 3 : to bring back to or put back into a former or original state : RENEW 4 : to put again in possession of something." WEBSTER'S NEW COLLEGIATE DICTIONARY 987 (1973). Here, the definition is consistent with the return of property. Although, one definition provides "to bring back to or put back into a former or original state[,]" it is followed by "RENEW."

The language of the statute does not contain the word "renew" or any language that requires property to be restored to its former or original condition. Thus, review of the plain meaning of that term supports the conclusion that the statute only provided for the return of property. We also note that the statute is found in the Article entitled "Search Warrants" and section entitled "Application or motion for restoration of property." It is clear that this statute created a criminal, and not, civil remedy, for the physical return of property.

Section 1-203(d)(1) directs the circuit court or district court judge to "cause property rightfully taken under a search warrant to be *restored to the person from whom it was taken* if, at any time, *on application* to the judge, the judge finds that the property is being wrongfully withheld after there is no further need for *retention of the property*. (Emphasis added.) Subsection (d)(2) directs the court to "return" property rightfully taken under a search warrant upon receiving an "oral motion . . . on the ground that the property is being wrongfully withheld after there is no further need for *retention of the property*."

**12**

Here, appellant made no application or oral motion to a judge for the return of property, as required under the statute. Thus, appellant did not follow the proper methods to seek return of his property.

Furthermore, appellant's contention that § 1-203(d)(1) provides for money damages would result in an illogical conclusion in which persons making a claim under subsection (d)(1) would be entitled to collect damages while those claiming under subsection (d)(2) would only be entitled to the return of possession of the property seized.

### ii. Legislative History

"Nevertheless, we may resort to legislative history to ensure that our plain language interpretation is correct." *Bd. of Educ. of Baltimore Cnty. v. Zimmer-Rubert*, 409 Md. 200, 215 (2009) (internal citation omitted). "We avoid a construction of the statute that is unreasonable, illogical, or inconsistent with common sense." *Id.* (internal quotation marks and citations omitted). The term "restore" has been used in the statute since it was enacted in 1939 under Article 27, Chapter 749, section 306 (1939).[3] Since then, the statute was amended, which this Court discussed in great detail in *In re Special Investigation No. 228*, 54 Md. App. 149 (1983). Thus, review of that case is instructive to

---

[3] The relevant portion of § 306 provides: " If, at any time, on application to a Judge of the Circuit Court of any County or of the Criminal Court of Baltimore City, it appears that the property taken is not the same as that described in the warrant or that there is no probable cause for believing the existence of the grounds on which the warrant was issued, said judge must cause it to be restored to the person from whom it was taken; but if it appears that the property taken is the same as that described in the warrant and that there is probable cause for believing the existence of the grounds on which the warrant was issued, then said judge shall order the same retained in the custody of the person seizing it or to be otherwise disposed of according to law."

our analysis. In that case, this Court thoroughly analyzed and explained the purpose of the

former Article 27, § 551, predecessor to C.P. § 1-203:

> Prior to 1975, § 551 had directed that property *"be restored to the person from whom it was taken" only in cases where that taking had been somehow improper, at least illegal if not actually unconstitutional.* Chapter 704 of the Acts of 1975 added an additional set of circumstances when *property should be returned*, one where the initial search and seizure had been perfectly proper but where the criminal case had since been *nol-prossed* or dismissed or had resulted in an acquittal. Under such circumstances, all property "except contraband or any property prohibited by law from being recoverable, may be returned to the person to whom it belongs without the necessity of that person instituting an action for replevin or any other legal proceeding against the agency having custody of the property."
>
> This set of circumstances does not remotely involve the Exclusionary Rule or any other rule of evidence. It is substantive law, not procedural law. It only comes into play after the trial is over or the prosecution otherwise terminated. A prophylactic rule, moreover, aimed (as is the Exclusionary Rule) at deterring future police misbehavior, would have no utility in circumstances such as these where there has been no police misbehavior. *This aspect of § 551, furthermore, directs that the property be returned not "to the person from whom it was taken" but rather "to the person to whom it belongs."* Here is a significant difference. Here, the rightful owner of stolen property could invoke the benefit of § 551, even following the possible acquittal of the thief. The earlier provisions of § 551, on the other hand, seemed to direct the return of unlawfully seized property to the thief himself (assuming he was the person from whom the stolen goods had been unlawfully seized).
>
> The 1976 amendment added yet a third set of circumstances under which property should be returned. This newly created subsection (c) also dealt with circumstances where initially the property had been "rightfully taken under a search warrant" but where it subsequently "is being wrongfully withheld after there is no further need for retention of the

property." Strangely and perhaps inadvertently, this third subsection of the law directs the judge to cause the property *"to be restored to the person from whom it was taken," and not, as in subsection (b), "to the person to whom it belongs." Applied literally, this subsection would seem to confer a right upon a convicted thief which would not be available to the rightful owner of the stolen good*s.

*Id.* at 164-65 (emphasis added). This Court concluded that "Subsections (b) and (c) deal exclusively with possessory rights separate and apart from any question of

unconstitutional or otherwise unlawful searches.[4] They are easy to understand and to apply." *Id.* at 167.

---

[4]    We keep in mind that C.P. § 1-203 was a recodification of the statute, and thus the legislative intent in enacting it was not to change the substantive meaning of the statute, but rather its purpose is for "clarity." *Allen v. State*, 402 Md. 59, 71-72 (2007) (internal citation omitted) ("[R]ecodification of statutes is presumed to be for the purpose of clarity rather than change of meaning and, thus, even a change in the phraseology of a statute by a codification will not ordinarily modify the law unless the change is so radical and material that the intention of the Legislature to modify the law appears unmistakably from the language of the Code."). "The Legislature is presumed to be aware of our prior holdings when it enacts new legislation and, where it does not express a clear intention to abrogate the holdings of those decisions, to have acquiesced in those holdings." *Id.* at 72 (internal citations omitted)

Thus, "there is a strong presumption that the Legislature did not intend, in recodifying the statute as part of its general recodification of the State's Criminal [procedural] laws in 200[1]," to change the substantive meaning of the statute. *Id.* The Floor report of the recodification confirms that Subsection (b)(1), which is titled "Return of property wrongfully taken," and stating that property be "restored to the person from whom it was taken," *refers* to the person "from whom it [*i.e.*, property] was taken." Floor report on Senate Bill 1, 2001 regular session of the General Assembly, by the Senate Judicial Proceedings Committee, at 17 (emphasis added). The Floor Report also explains that subsection (c)(2), which requires property to be "returned to the person to whom the property belongs[,]" "*refers* to the person to whom property belongs." *Id.* In addition, Subsection (d)(1) titled "Return of property rightfully taken and wrongfully held," refers to the person "from whom the property was taken." It is clear, therefore, that the legislature's use of the terminology "return" and "restore" was intently used to distinguish between the possessory rights of owners of the property and those in mere possession of the property. This is consistent with the 1976 Floor report which titled the relevant section as "Search and Seizure –Return of Seized Property," and the report also provides that its purpose is for "providing procedures to obtain the return of property seized or withheld in certain circumstances; providing [[for the payment of costs incurred]] **that court costs shall not be assessed** under certain circumstances in obtaining the return of certain  seized or withheld property; and making certain technical correction to the language and style of expressions of certain provisions of the Annotated Code of Maryland." House of Delegates Bill 902, 1976 regular session of the General Assembly, by the House of Delegates Judicial Proceedings Committee, at 1 (emphasis and alterations in original). This amendment declined to impose court costs on the petitioner if the court "restored" the property "from whom it was taken." Again, there is no indication that the General Assembly intended to create a private right of action for damages to property resulting from a search and seizure.

Similarly in *Dail v. Price*, 184 Md. 140 (1944), the Court of Appeals also explained that Section 306 of Article 27 of the Maryland Code (1939), which was another predecessor to C.P. § 1-203, "was not designed as a substitute for an action of replevin, or other appropriate proceeding, for the determination of the right to possession of property after it has served its purpose as real evidence in a criminal case."[5] *Id.* at 144.

The Supreme Court of Oregon's opinion in *Emery v. State*, 688 P.2d 72 (Or. 1984), is instructive. That court dealt with the issue of the definition of "restore." That court examined a similar statute, Or. Rev. Stat. Ann. § 133.633 (West 2014), which provides:

> (1) Within 90 days after actual notice of any seizure, * * *:
>
> (a) An individual from whose person, property or premises things have been seized may move the appropriate court to *return* things seized to the person or premises from which they were seized.
>
> (b) Any other person asserting a claim to rightful possession of the things seized may move the appropriate court to *restore* the things seized to the movant.

*Id.* at 75 (alterations and emphasis in original).

In that case, the court considered whether the statute entitled plaintiff to damages to his pickup truck that was seized by the state as evidence on a warrant. *Id.* at 73-74. The plaintiffs contended that the Oregon "legislature intended that in addition to restoring possession of the seized property to the owner, the state is also required to restore the

---

[5] Section 306 provided: "'If, at any time, on application to a Judge of the Circuit Court of any County or of the Criminal Court of Baltimore City, it appears that the property taken is not the same as that described in the warrant or that there is no probable cause for believing the existence of the grounds on which the warrant was issued, said judge must cause it to be *restored* to the person from whom it was taken; but if it appears that the property taken is the same as that described in the warrant and that there is probable cause for believing the existence of the grounds on which the warrant was issued, then said judge shall order the same retained in the custody of the person seizing it or to be otherwise disposed of according to law.'" *Dail*, 184 Md. at 142 (emphasis added).

property to its previous condition. In other words, they argue[d] that the defendants are required to give the 1977 pickup truck back to them in the same condition it was at the time of the seizure or pay damages." *Id.* at 75. The *Emery* court determined that the legislature used the term "return" in § 133.633(1)(a) and the term "restore" in § 133.633(1)(b) "because it perceived a distinction in the classes of people moving to reclaim the possession of property that had been seized." *Id.* at 76. The *Emery* court explained that the legislature:

> placed a tight and limited definition on the term "return" and in effect used it to mean that property could only be "returned" to people and premises from whence it came. Having used a tight definition of "return" in [§] 133.633(1)(a) then the legislature needed a broader term to define the giving back of property to other persons claiming the right to possession under subdivision (b) and chose the word "restore." People in the latter category include the owners of stolen property—their "rightful possession of the things seized" may be "restored."

*Id.* That court further explained that "[t]o hold otherwise and follow the plaintiffs' contention would mean that persons claiming under [§] 133.633(1)(a) would be entitled only to the return of possession of the property seized while those qualifying under [§] 133.633(1)(b) would be able to collect damages. There is no logical basis for such a distinction and we hold that the legislature did not so intend." *Id.*

As discussed earlier, this Court also recognized this distinction between the possessory rights of those owners holding legal title and those in mere possession of the property. *In re Special Investigation No. 228*, 54 Md. App. at 165 (noting that the statute's language that "property [] 'be restored to the person from whom it was taken'"

18

had the effect of returning stolen goods to a thief, although they do not have rightful ownership of the stolen goods). We find guidance in both cases and agree that a broad definition of the term "restore" is inappropriate. Thus, we cannot interpret the language of the statute in favor of appellant's reading that C.P. § 1-203(d) provides a statutory right to money damages.

"[T]he presence or absence of an indication of legislative intent to create a private remedy is a very important factor to be considered by a court in determining whether to recognize a tort duty or a new private right of action, it is not the only factor." *Erie Ins. Co. v. Chops*, 322 Md. 79, 90 (1991) (internal citations omitted). Other factors include "whether the plaintiff is one of the class for whose special benefit the statute was enacted, and whether it is consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff." *Id.* at 91 (citations omitted).

The statute in question is titled the "Criminal Procedure Article." The prefatory purpose statement of Senate Bill 1, which recodified the Criminal Procedure Article in 2001, clarified that the purpose of the new article was "to revise, restate, and recodify the laws pertaining to law enforcement procedures, the arrest process, warrantless arrests, [] fresh pursuit both in-State and out-of-state [,] . . . the forfeiture of property involved in controlled dangerous substance violations and violations of gambling and gun laws; defining certain terms; providing for the construction and application of this Act; . . . and generally relating to laws of the State relating to criminal procedure." It is apparent that the statute was not substantively changed to benefit a special class of person. Rather, the statute's principal focus remained the same: to guide the courts and police forces in

**19**

performing their duties relating to criminal procedure, and not to provide remedies for those claiming police officers violated the statute.

It is also apparent that the underlying purpose of subsection (d)(1) of § 1-203 is to permit a judge to allow persons to seek the return of their property after the police have executed a search and seizure warrant, rather than to compensate for damages that arise from the execution of a search warrant. *See In re Special Investigation No. 228*, 54 Md. App. at 160 ("The central purpose . . . was to set out the requirements for obtaining a search warrant."). Given the legislative history of the statute, and the absence of legislative intent to create a private remedy, it is apparent that § 1-203(d) does not provide an implied private right of action.

As a result, appellant's claims for damages to his firearms are grounded in tort law, and not § 1-203. Our case law supports the circuit court's conclusion that appellant's claims for "return of property" and damages to his firearms are tort claims. In *Novak v. State*, 195 Md. 56 (1950), the Court of Appeals considered a case where the petitioner, who was convicted for violating gambling laws, filed an action to recover monies seized during the execution of a search and seizure warrant. *Id.* at 59-60. The Court of Appeals considered the petition to be filed appropriately in the criminal case as "an equivalent of an action of replevin (if the money was still held in specie) or of trespass or trover for the determination of title (so far as necessary) or right of possession to the money." *Id.* at 64.

In the present case, appellant demanded the return of property, which is equivalent to a replevin action. In addition, the plaintiff's other counts were titled detinue, trover and conversion, which are also tort claims.[6]

Therefore, we affirm the circuit court's holding that appellant's claims were tort actions. Having made this determination, we next address whether appellees were entitled to the enjoyment of governmental immunity.

## II. MOTION TO DISMISS

### A. Contentions

Appellant contends that the circuit court erred in dismissing his claims against Cpl. Kidwell and Det. Socha. Appellant contends that there was ample pleading and showing of malice. Specifically, appellant points to the allegations in the complaint:

- The defendants caused "extensive damage" to both locations searched and "items seized as well as property not seized."

---

[6] We also note that appellant did not bring an action under the Local Government Tort Claims Act ("LGTCA"). *See Dehn Motor Sales, LLC v. Schultz*, 439 Md. 460, 486-87 (2014) (holding a replevin action did not comply with the notice requirement under LGTCA, because it only communicated "to the City that it sought return of the vehicles and loss-of-use damages[,]" rather than putting "the City on notice to "start an investigation into" whether the officers acted with "actual malice" or "the nature and extent of the actual injuries sustained, the causal relationship of the injuries to the alleged misconduct, the likelihood of an award of compensatory and/or punitive damages, . . . and litigation strategy, that would be later in issue in the second case." (internal quotation marks and citation omitted)).

- The defendants acted to "intimidate [appellant], to cause economic injury to [appellant], and for gratuitous sport rather than for proper law enforcement purposes[,]" discussed *infra*.

- "Det. Socha [and] Cpl. Kidwell and other members of the [Baltimore County Police Department ("BCPD")] . . . had actual knowledge that such allegations were false and/or misleading . . . ."

- The defendants made numerous derogatory comments to his employees and family members regarding his character, discussed *infra*.

- That Appellant had yet to be charged with any crime by the appellee at the date of the Complaint.

- The BCPD was "in the custom of overly aggressive conduct, under the pretense of enforcing various firearms statutes."

Appellant asserts that these allegations easily met the requirement of raising a reasonable inference that the two officers intentionally performed an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure appellant.

Appellee counters that the circuit court did not abuse its discretion in dismissing claims against the two officers. Appellee contends that the circuit court considered appellant's allegations in comparison with the case law concerning qualified immunity for public officials and correctly ruled that the actions of both officers were not malicious. Appellee argues that the officers are shielded by immunity under Md. Code., Cts. & Jud. Proc. ("C.J.P.") § 5-507(a)(1) for public officials engaging in a discretionary capacity.

### B. Standard of Review

A motion to dismiss for failure to state a claim tests the sufficiency of the pleadings. Maryland Rule 2-322(b)(2). Therefore, when reviewing the circuit court's

grant of a motion to dismiss, the reviewing court "must assume the truth of, and view in a light most favorable to the non-moving party, all well-pleaded facts and allegations contained in the complaint," as well as reasonable inferences that may be drawn from them. *RRC Ne., LLC v. BAA Md., Inc.*, 413 Md. 638, 643 (2010) (internal citations omitted). We will affirm the circuit court's grant of a motion to dismiss "only if the allegations and permissible inferences . . . would not afford relief to the plaintiff." *Id.* A reviewing court may look only to the facts and allegations contained in the original complaint. *See id.* (citing *Converge Servs. Grp., LLC v. Curran*, 383 Md. 462, 475 (2004)).

### C. Analysis

Because appellee Baltimore County can only be held liable for Cpl. Kidwell and Det. Socha's actions if they acted with actual malice or committed an intentional tort, we address appellant's claim against the officers first.

Common law public official immunity applies when the actor is (1) a public official, (2) the tortious conduct occurred in the course of the actor's performance of discretionary, rather than ministerial acts, and (3) those acts were within the scope of the actor's official duties. *See Houghton v. Forrest*, 412 Md. 578, 585 (2010).

Policemen are "public officials." *Robinson v. Bd. of Cnty. Comm'rs for Prince George's Cnty.*, 262 Md. 342, 346-47 (1971) ("It is clear that policemen are 'public officials,' and that when they are within the scope of their law enforcement function they are clearly acting in a discretionary capacity.") (internal citation omitted). No dispute has been raised as to whether Cpl. Kidwell and Det. Socha's actions were discretionary or

ministerial. As they were executing a search warrant—a function well-within the scope of their law enforcement duties—it is apparent that Cpl. Kidwell and Det. Socha were empowered with the discretionary "freedom to act according to one's judgment in the absence of a hard and fast rule." *Schneider v. Hawkins*, 179 Md. 21, 25 (1940). Thus, both officers fell within the class of employees who might enjoy common law public official immunity based on being public officials, engaged in the performance of discretionary acts within the scope of their employment. *See Houghton*, 412 Md. at 585.

Common law public official immunity does not shield a defendant from liability in cases where the official has committed an intentional tort, *id.*, or acted with malice. *Robinson*, 262 Md. at 348 ("Indeed we can not [sic] think of any reason why a public official should not be held responsible for his malicious actions even though he claims they were done within the scope of his discretionary authority.").

"[Actual] malice is established by proof that the defendant-officer 'intentionally performed an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff.'" *Town of Port Deposit v. Petetit*, 113 Md. App. 401, 416 (1997), *cert. denied*, 346 Md. 27 (1997) (quoting *Leese v. Balt. Cnty.*, 64 Md. App. 442, 480 (1985), *cert. denied*, 305 Md. 106 (1985)).

"[O]rdinarily, the presence or absence of malice is a fact to be determined at trial." *Town of Port Deposit*, 113 Md. App. at 414. A conclusory allegation that a public official acted "maliciously," without any supporting allegation of fact, is insufficient to defeat a motion to dismiss on the ground of public official immunity. *Carder v. Steiner*, 225 Md.

271, 274-75 (1961), *overruled on other grounds by James v. Prince George's Cnty.*, 288 Md. 315, 323 n.9 (1980).[7] Actual malice does not always have to be shown with specificity; it can be inferred. *Henderson v. Md. Nat'l Bank*, 278 Md. 514, 520, 523 (1976).

Here, appellant asserts that his pleading sufficiently showed an inference of malice, and as a result, the circuit court incorrectly granted the officers' motion to dismiss. Contrary to this assertion, we have held "[t]he mere existence of an issue as to intent, motive, or state of mind is insufficient . . . to defeat a motion to dismiss." *Balt. Police Dep't v. Cherkes*, 140 Md. App. 282, 330 (2001); *cf. Thacker v. City of Hyattsville*, 135 Md. App. 268, 301-02 (2000) (discussing the evidentiary showing necessary to demonstrate "intent, motive, or state of mind" needed for malice in order to defeat summary judgment).

Appellant's pleading asserts that the appellees "seized various property belonging to [appellant] . . . and caused extensive physical damage" to appellant's business. The complaint also asserts that "[appellees] ransacked [appellant's residence] . . . and seized a large quantity of [appellant's] possessions," "caus[ing] extensive damage to the items seized as well as property not seized." The pleading further alleges appellees acted "to

---

[7]

"To the extent that *Carder v. Steiner*, 225 Md. 271, 170 A.2d 220 (1961) and similar cases indicate that the existence of the first factor is sufficient to create public-official immunity, they are overruled." *James v. Prince George's Cnty.*, 288 Md. 315, 323 n.9 (1980). The first factor is "that the individual actor, whose alleged negligent conduct is at issue, is a public official rather than a mere government employee or agent." *Id.* at 323.

cause economic injury to [appellant], and for gratuitous sport rather than for proper law enforcement purposes."

Additionally, the complaint alleged that the appellee officers made derogatory statements to appellant's employees. When asked why there was no signed warrant, an officer allegedly responded "[w]e're the police, we can do whatever we want" and "[y]our boss is in big trouble."

The complaint went on to say that during the execution of the search warrant at appellant's residence, the officers made a statement to appellant's son-in-law that "[w]arrants like this are for criminals, not collectors." In addition, when appellant met with the officers to show documentation for the firearms, they told him he should "save it for court," and that his documentation was "wrong" or "bull__t." Appellant also alleged that the officers also stated words to the effect that he "would never get his property back." Finally, the complaint alleged that appellant was yet to be charged with any crime by the appellee County and the "BCPD [was] in the custom of overly aggressive conduct, under the pretense of enforcing various firearm statutes . . . ."

From these facts alone, we decline to hold that the pleading set forth everything necessary to show actual malice. Appellant's references to the police officer's statements do not indicate that the officers had acted with "ill will, improper motivation, or evil purpose" when they executed the search and seizure pursuant to the warrant. *Shoemaker v. Smith*, 353 Md. 143, 161 n. 6 (1999) (internal quotation marks and citation omitted).

When viewing the facts in the light most favorable to appellant, the complaint does not allege "with some clarity and precision . . . facts which make the act[s] malicious."

*Penhollow v. Bd. of Comm'rs for Cecil Cnty.*, 116 Md. App. 265, 294 (1997). The complaint claims that the execution of the search and seizure warrant caused extensive damage to both locations, but it does not indicate how the officers' conduct caused the damage, and it also fails to indicate damages incurred by appellant. Appellant's family members and neighbors were present at the time the officers executed the search warrant, and so appellant could have provided sufficient facts in his pleadings to demonstrate that the officers acted with actual malice. But here, appellant failed to do so. Although, appellant's witness testified that the police officers did not act with care when they were stacking the firearms as if they were building a "bon fire," this assertion is not sufficient to show that the officers acted maliciously to cause damage to his firearms.

Furthermore, on March 15, 2011, after the circuit court granted the motion to dismiss the officers, it also allowed appellant leave to amend his pleading giving appellant ample time to amend his pleading. But appellant did not amend his pleading to provide supporting facts that the officers acted with actual malice. Rather, appellant sought to amend his complaint more than two years later on April 12, 2013, which the circuit court correctly denied.

Furthermore, the "actual malice" alleged in this case does not come close to the sufficient pleadings of "actual malice" we found in other cases.[8] For example, in

---

[8]

    *See, e.g., Cox v. Prince George's Cnty.*, 296 Md. 162, 164 (1983), *superseded by statute* C.J.P. §§ 5-401 to 5-404, *as recognized by Thomas v. City of Annapolis*, 113 Md. App. 440 (1997) (holding pleading was sufficient to defeat a motion to dismiss based on allegations that two police officers were under the control and supervision of the county when they "maliciously and intentionally allowed and encouraged the [police] dog to attack and bite Cox, 'in clear and substantial excess of the force needed to restrain and detain' him[,]" and that "the two officers subsequently beat and further injured Cox without justification."); *Sawyer v. Humphries*, 322 Md. 247, 261 (1991) (holding complaint sufficiently pleaded malice where it contained allegations that a police officer "unprovoked and

*Robinson*, the Court of Appeals held that malice was sufficiently pleaded, and the allegations were more than mere conclusory statements where the plaintiff claimed that he was "beaten, bruised, burned, humiliated, imprisoned, charged and prosecuted, all without just cause and with malice, that [the police officers] 'knew that the prosecution of [plaintiff] was false, groundless and without probable cause,' and that upon trial he was found to be not guilty of the false and groundless charges." *Robinson*, 262 Md. at 349-50.

Unlike *Robinson*, appellant does not describe the "extensive" damages he endured nor does appellant offer any facts that the officers were acting without just cause and malice. Appellant's conclusory statement that the officers acted with malice and defendants acted "to cause economic injury to [appellant], and for gratuitous sport rather than for proper law enforcement purposes" is unsupported by the record. Here, the officers did not initiate the search warrant on their own, rather, the officers were contacted by the Baltimore and Phoenix ATF field officers informing them that appellant was under investigation for possessing an "illegally manufactured machine gun." Based on this information, the officers obtained a search and seizure warrant on the basis of C.L. § 4-405, possession of a machine gun for an aggressive purpose. The officers executed the search warrant along with the assistance of other BCPD officers and the ATF agents.

The officers were acting under a legally authorized search warrant, and therefore, the pleading failed to demonstrate that the officers' actions were performed "without legal

without cause, while in civilian clothes and without identifying himself," threw a rock hitting "the side of plaintiffs' automobile," and that "the defendant 'grabbed [Mr. Sawyer] and wrestled him to the ground, grabbed [him] by the hair and began hitting him in the face,' and said that 'he was going to kill Sawyer.'").

justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully [cause] injur[y]" to appellant's place of business and residence. *Town of Port Deposit*, 113 Md. App. at 416. Thus, this Court finds that appellant's complaint did not sufficiently allege that the officers acted with actual malice, and the circuit court correctly granted the officers' motion on that basis.

In addition, there is no special relationship between appellant and the police officers eliminating government immunity and imposing tort liability on the officers. *Ashburn v. Anne Arundel Cnty.*, 306 Md. 617, 634-35 (1986) (holding that police procedures set forth in the Transportation Article requiring officers to detain and investigate drunk drivers did not provide injured pedestrian with a civil cause of action absent police assuming a "special relationship"). "In order to impose a special relationship between police and victim, and thereby to create a duty in tort, however, a statute must set forth mandatory acts clearly for the protection of a particular class of persons rather the public as a whole." *Id.* at 635 (internal quotation marks and citations omitted). Under the general "special relationship" rule, "there is no duty in negligence terms to act for the benefit of any particular person, [but] when one does indeed act for the benefit of another, he must act in a reasonable manner." *Id.* at 630-31.

Here, the police officers were executing the search warrant in connection with an investigation that appellant may be in violation of weapons law; thus the officers were not acting to benefit appellant. Under these circumstances, the absence of "actual malice" and the absence of a "special relationship" between the officers and appellant do not eliminate

29

the officers' entitlement to governmental immunity, or entitle appellant to a civil cause of action for money damages.

Finally, because we are affirming the circuit court's motion to dismiss as to the two policer officers on the basis that appellant failed to plead facts of actual malice, the circuit court correctly granted appellee Baltimore County's motion for judgment. *DiPino*, 354 Md. at 48 (holding that Baltimore City cannot be liable for police officer's alleged tortious conduct where the officer was acting in a governmental capacity).

Thus, we affirm the circuit court's order granting appellee Cpl. Kidwell and Det. Socha's motion to dismiss, and the order granting appellee Baltimore County's motion for judgment.

### III.INJUNCTION

### A.Contentions

Appellant contends that the circuit court erred in its determination that the injunction did not provide for a cause of action. Appellant relies on *Automatic Retailers of America, Inc. v. Evans Cigarette Service Co.*, 269 Md. 101 (1973), for the proposition that the circuit court should have resolved the equitable issues between the parties by enforcing the injunction.

Appellee counters that the appellant's reliance upon *Automatic Retailers, Inc.*, is misplaced, because in that case, the Court of Appeals merely held that a suit could continue to trial even though the requested court injunction was moot. As a result, that case continued to trial to determine damages based on a breach of contract, not a violation of an injunction order. Appellee contends that a violation of a preliminary injunction does

not in and of itself imply that a cause of action can be instituted. Furthermore, appellant did not show that appellee violated the injunctive order, because at the time the temporary restraining order was issued, the ATF, and not the appellee, was in possession of appellant's firearms. In addition, appellant failed to show that appellee caused the alleged damages to the firearms. Finally, appellee argues that assuming arguendo that a cause of action can be brought on that basis, appellant has failed to show how his claim can overcome governmental immunity.

### B. Analysis

Violation of an injunction or restraining order that is valid and operative is punishable as a contempt of court. *Bailey v. Miller*, 233 Md. 138, 142 (1963); *Sheets v. City of Hagerstown*, 204 Md. 113, 116, 118 (1954); *Donner v. Calvert Distillers Corp.*, 196 Md. 475, 484-85 (1950). The power to punish a violation of an injunction or restraining order rests in the court which granted it. *Sheets*, 204 Md. at 118-19. To punish the violation of an injunction, the act complained of must fall squarely within the restraining language of the injunction. *Carter Prods., Inc. v. Colgate-Palmolive Co.*, 164 F. Supp. 503, 524 (D. Md. 1958), *aff'd* 269 F.2d 299 (4th Cir. 1959); *Giant of Md., Inc. v. State's Att'y for Prince George's Cnty.*, 274 Md. 158, 171-72 (1975).

In the present case, the injunctive action was for the sole purpose of enjoining appellee from "selling, destroying or the damaging the property seized from [appellant] . . . until a trial on the merits has concluded." Appellant did not initiate contempt proceedings for the alleged violation of the preliminary injunction, but rather argues on appeal that the injunction was violated. As the Court of Appeals has previously noted,

"injunctive relief is a preventive and protective remedy, aimed at future acts, and is not intended to redress past wrongs." *Ehrlich v. Perez*, 394 Md. 691, 733-34 (2006) (internal quotation marks and citations omitted). Furthermore, a preliminary injunction serves to "preserve the court's ability to render a meaningful decision on the merits by sustaining the status quo." *Id.* (internal quotation marks and citations omitted); *see also Harford Cnty. Educ. Ass'n v. Bd. of Educ. of Harford Cnty.*, 281 Md. 574, 585 (1977) ("[I]t is fundamental that a preliminary injunction does not issue as a matter of right, but only where it is necessary in order to preserve the status quo." (internal citations omitted)).

Injunctive relief relating to the protection of appellant's property was granted on September 22, 2010, but through appellant's own testimony and his witnesses, the damages appear to have arisen from appellees' conduct during the initial seizure of property, which is the very tort claim from which the government is immune. Appellant's request for injunctive relief was to prevent future harm and not to redress past wrongs. Therefore, appellant cannot rely on the injunction as a form of relief.

## IV. AMENDMENT

### A. Contentions

Appellant contends that the circuit court abused its discretion in denying his request for leave to amend the pleadings, because it applied the incorrect standard. Appellant asserts that in considering whether to allow appellant leave to amend his pleadings, the circuit court concluded that there must be "very good cause" to do so. But

appellant argues that the correct standard is whether justice is done, so that the merits of the case are resolved. Appellant argues that amending his complaint to bring a cause of action under 42 U.S.C. § 1983 would not have prejudiced the officers, because appellant had already probably put on all of the evidence that he could, and that the elements of § 1983 cause had been met. Appellant asserts that appellant was prejudiced, because appellees' answers to interrogatories regarding the extent of the ATF's involvement in the investigation were not accurate.

Appellee counters that the circuit court did not abuse its discretion in denying appellant's motion for leave to amend his pleadings, because the circuit court had previously granted appellant leave to amend his complaint on March 15, 2011, which gave appellant over two years to amend the complaint. Furthermore, appellant rested his case on March 20, 2013, and sought to amend his complaint seventeen days prior to the scheduled hearing on April 29, 2013. Appellee counters that allowing appellant to amend his complaint would have prejudiced appellees, because appellant had not alleged or implied a federal constitutional claim in his complaint, which only contained claims for return of property, detinue, conversion and trover. Furthermore, it would have also caused undue delay in the progress of the trial.

### B. Standard of Review

Amendments filed later than 30 days before trial are governed by Maryland Rule 2-341(b), which provides "[a] party may file an amendment to a pleading . . . only with leave of court. If the amendment introduces new facts or varies the case in a material respect, the new facts or allegations shall be treated as having been denied by the adverse

**33**

party. The court shall not grant a continuance or mistrial unless the ends of justice so require."

"With respect to procedural issues, a [circuit] court's rulings are given great deference. The determination to allow amendments to pleadings or to grant leave to amend pleadings is within the sound discretion of the trial judge." *Schmerling v. Injured Workers' Ins. Fund*, 368 Md. 434, 443-44 (2002). Only upon a showing of a clear abuse of discretion will a circuit court's rulings be overturned. *Id.* at 444.

"There is an abuse of discretion where no reasonable person would take the view adopted by the [circuit] court, or when the court acts without reference to any guiding rules or principles." *In re Adoption/Guardianship No. 3598*, 347 Md. 295, 312 (1997) (internal quotation marks and citations omitted). "An abuse of discretion may also be found where the ruling under consideration is clearly against the logic and effect of facts and inferences before the court, or when the ruling is violative of fact and logic." *Id.* (internal quotation marks and citations omitted).

Generally, amendments to pleadings "should be freely allowed in order to promote justice, so that cases will be tried on their merits rather than upon the niceties of pleading." *Crowe v. Houseworth,* 272 Md. 481, 485 (1974) (internal citations omitted). "Although it is well-established that leave to amend complaints should be granted freely to serve the ends of justice and that it is the rare situation in which a court should not grant leave to amend, an amendment should not be allowed if it would result in prejudice to the opposing party or undue delay, such as where amendment would be futile because

the claim is flawed irreparably." *RRC Ne., LLC*, 413 Md. at 673-74 (internal citations omitted).

### C.Analysis

Although liberal amendment of pleadings is the policy in Maryland, we recognize that limits exist on the extent to which the court will allow amendment. *See id.* Having reviewed the procedural history of this case, we find no abuse of discretion on the part of the circuit court in refusing to grant appellant's motion to amend. Accordingly, the judgment of the circuit court is affirmed. *See Walls v. Bank of Glen Burnie*, 135 Md. App. 229, 245-46 (2000) (internal citations omitted) (reversing circuit court's denial of plaintiff's motion to amend where 1) amended complaint was the only means she could pursue her federal statutory claim, 2) final judgment on her state claims relating to wrongful discharge would have barred her federal claim as result of res judicata, 3) claims of discrimination put defendant on notice of Title VII violation, and relation back doctrine would have allowed the claim under federal rules, 4) and plaintiff requested leave to amend her complaint prior to dismissal, and again, after dismissal to pursue the legal theory that it constituted a violation of Title VII.)

Unlike *Walls*, appellant's claims related to tort claims relating to his property; therefore, appellee was not on notice that plaintiff would assert federal § 1983 constitutional violations. *See id*. Also unlike *Walls*, the circuit court granted appellant leave to amend his complaint, but he failed to do so until two-and-a-half years later. *Id.* Additionally, final judgment of appellant's state claims would not bar him from pursuing his federal claims.

Here, the circuit court allowed appellant leave to amend his complaint on March 15, 2011. Appellant did not attempt to amend his complaint or add the § 1983 claim, until April 12, 2013, a period of two and a half years later. The circuit court also noted that this motion was made "not even on the eve of trial. The [appellant] had put on its case and rested. And the County filed a motion for judgment. And because the County raised governmental immunity, [appellant] now wants to allege a new cause of action to avoid the immunity claim." Furthermore, appellant knew that the ATF was involved, and the warrant also discussed the involvement of the ATF. In addition, Det. Socha's affidavit also discussed the ATF's extensive involvement. Therefore, the circuit court found that the pleadings did not allege any § 1983 claims, nor did appellant attempt to amend his complaint to allege that cause of action. *See Prudential Secs., Inc. v. E-Net, Inc.*, 140 Md. App. 194, 234 (2001) (reversing circuit court's refusal to allow plaintiff to amend complaint where it was filed before trial date was set and did not result in prejudice or undue delay, because the amended complaint arose from the same "operative factual pattern").

Asserting a new constitutional claim based on a federal law would change the nature of the cause that was litigated, which was based on alleged tort violations under state law. This would result in undue delay and prejudice. All discovery was completed, other than the photos that appellee had taken during the execution of the search warrant, which were later provided and only dealt with the issue of government immunity relating to the tort claims. In addition, appellant rested his case. In appellant's response to appellees' motion for judgment, appellant acknowledged, "the obvious [] issue is that

[appellant] did not specifically plead a cause of action under 42 U.S.C. Section 1983." Thus, the circuit court's decision was not "clearly against the logic and effect of facts and inferences before [it]." *In re Adoption/Guardianship No. 3598*, 347 Md. at 312.

In light of all these considerations, we cannot hold that the circuit court abused its discretion and that "no reasonable person would take the view adopted by the [circuit] court," or that the court acted "without reference to any guiding rules or principles." *Id.* Thus, we affirm the circuit court's order denying appellant's motions for leave to amend and to reconsider denial of motion for leave to amend.

## V. DISCOVERY SANCTIONS

### A. Contentions

Appellant contends that the circuit court abused its discretion when it failed to impose a penalty against appellee for failing to produce the pictures as ordered by the circuit court. Appellant argues that appellee was verbally ordered to produce the photos at the March 21, 2013, hearing, but after the circuit court learned that appellee defied this order at the hearing on April 29, the circuit court failed to impose a sanction.

Appellee concedes that it failed to produce discovery in a timely manner, but argues that although appellant requested pictures, he never filed a motion to compel discovery when the photographs were not produced, and appellant never raised a preliminary motion in trial to compel discovery. Appellee also counters that it eventually produced all discoverable material, and the circuit court gave appellant ten days to file his brief relating to the issue of governmental immunity. Because the circuit court viewed the discovery violation as having no impact upon appellee's claim of governmental

immunity, and provided appellant ten days to brief the issue upon receipt of the photos, the circuit court did not abuse its discretion.

### B. STANDARD OF REVIEW & ANALYSIS

When reviewing the circuit court's refusal to impose sanctions for discovery abuse, we review the circuit court's decision under an abuse of discretion standard. *See Braxton v. Faber,* 91 Md. App. 391, 396-97 (1992) ("[W]e cannot say that the trial judge abused his discretion in not imposing sanctions" for discovery violation).

Under Maryland Rule 2-432, "[a] discovering party may move for sanctions under Rule 2-433(a), without first obtaining an order compelling discovery" for certain complete failures to comply with discovery. Rule 2-432(b), on the other hand, calls for first moving for an order to compel discovery, if, among other failures, "a party fails to comply with a request for production or inspection under Rule 2-422." *Id.* 2-432(b)(1)(E). The authors of the Maryland Rules Commentary explain:

> When a party fails to provide discovery altogether, the party seeking discovery has two choices: to file a motion for immediate sanctions under section (a) of [Rule 2–432] or, in the alternative, to file a motion for a court order that compels the discovery under section (b) [of Rule 2–432]. The immediate sanctions available are those contained in section (a) of Rule 2–433 . . . . With respect to any other failure of discovery, such as an incomplete or inadequate answer or a contested objection properly raised, the party may only file a motion to compel discovery under section (b). *An order compelling the discovery must be obtained prior to the impositions of certain sanctions . . .*

*Butler*, 435 Md. at 657–58 (quoting Paul V. Niemeyer and Linda M. Shuett, Maryland Rules Commentary 341 (3d ed. 2003)) (emphasis added); *see also Hossainkhail v.*

*Gebrehiwot*, 143 Md. App. 715, 732 (2002) ("[I]f there has been incomplete discovery, a party may seek an order compelling discovery under Rule 2-432(b). When a motion to compel discovery is granted and then violated, a court may award sanctions pursuant to Rule 2-433(b) upon motion of a party." (internal quotation marks omitted)).

"A [circuit] court may not, *sua sponte,*" impose a sanction based on discovery violations, "without a party first moving for an order to compel or filing a motion for discovery sanctions." *Butler v. S & S P'ship*, 435 Md. 635, 658 (2013); *Hossainkhail*, 143 Md. App. at 730 ("A court may award sanctions for failure of discovery, therefore, only when there is a discovering and moving party.").

Here, appellant did not utilize any of the options as provided under the rule. Appellant did not file a Motion to Compel or a Motion for Sanctions. Thus, there was no moving party before the court, and appellant's alleged discovery violation was not properly before the court. If the circuit court imposed discovery sanctions, *sua sponte*, as appellant asserts it should have, the circuit court would have abused its discretion. Accordingly, the circuit court did not abuse its discretion in declining to impose sanctions for violation of discovery rules absent a motion to compel or motion for sanction before it.

> **JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**